**EXHIBIT A**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY |
|---|---|
| | (SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CHURCH OF SCIENTOLOGY INTERNATIONAL

*a corporate entity, and Does 1-20*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MARC HEADLEY

**FILED**
Los Angeles Superior Court

JAN 05 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* BC404958 |
|---|---|
| 111 North Hill Street Los Angeles 90012 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Barry Van Sickle, 1079 Sunrise Avenue, Suite B-315, Roseville, CA 95661
(916) 549-8784

| DATE: *(Fecha)* JAN 05 2009 | John A. Clarke | Clerk, by *(Secretario)* | _____ DM Swein | , Deputy *(Adjunto)* |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California

Code of Civil Procedure §§ 412.20, 465

*10*

1  BARRY VAN SICKLE - BAR NO. 98645
   1079 Sunrise Avenue
2  Suite B-315
   Roseville, CA  95661
3  Telephone: (916) 549-8784
   E-Mail:  bvansickle@surewest.net
4
   Attorney for Plaintiff
5  MARC HEADLEY

FILED
Los Angeles Superior Court

JAN 05 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

7

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES

BC404958

| | |
|---|---|
| 10  MARC HEADLEY, | ) PLAINTIFF'S COMPLAINT FOR: |
| 11              Plaintiff, | ) 1) **UNFAIR PRACTICES UNDER** |
| | )    **B&P §17200 ET. SEQ** |
| 12       vs. | ) 2) **LABOR CODE VIOLATIONS** |
| | ) 3) **REFORMATION OF EMPLOYMENT** |
| 13  CHURCH OF SCIENTOLOGY | )    **AGREEMENT** |
| 14  INTERNATIONAL, a corporate | ) |
| entity, AND DOES 1 - 20 | ) |
| 15 | ) |
| 16              Defendants. | ) |
| | ) |

17

### INTRODUCTION

18

19     1)    This is a test case, although the key legal issues

20  raised by the underlying facts have been decided in plaintiff's

21  favor by the U.S. Supreme Court, the California Supreme Court and

22  the Ninth Circuit Court of Appeals.  The goals of this case

23  include clearing the path for other workers of Scientology

24  organizations to obtain the compensation due them under

25  laws and forcing Defendant Church of Scientology International

26  (CSI), and affiliated Scientology entities, into future

27  compliance with state and federal labor laws.

28

CIT/CASE: BC404958 LEA/DEF#:
RECEIPT #: CCH11B7B2D112
DATE PAID: 01/05/09 12:45:13 PM
PAYMENT: $350.00
RECEIVED:
CHECK: CASE: 350.00
CHARGE:
CARD:
0310

1
PLAINTIFF'S COMPLAINT

//

1    2)    Defendant Church of Scientology International (CSI)

2   represents itself to be the "Mother Church" of Scientology.  CSI

3   has its principal office and apparent headquarters in Los

4   Angeles, California.  The County of Los Angeles is an appropriate

5   venue for this action.

6    3)    Plaintiff Marc Headley worked for below minimum wage

7   compensation at CSI from 1989 to 2005.  Plaintiff worked for an

8   unincorporated division of CSI known as Golden Era Productions,

9   which is located in Hemet, California.  Plaintiff's work duties

10  involved the production and sale of movies, videos and

11  promotional materials for the Scientology enterprise.  Plaintiff

12  Headley is currently a resident of Los Angeles, California.

13   4)    At times herein material, and continuing, Defendant CSI

14  was and is an enterprise conducting business, and an employer

15  paying employees to conduct said business, within the State of

16  California and in interstate commerce.  Accordingly, Defendant

17  CSI was, and is, subject to California and Federal laws

18  concerning its work force, working conditions, business

19  practices, minimum wage, payment for overtime and the protection

20  of minors.  As alleged in more detail herein, Defendant CSI has

21  systematically ignored and violated said laws to the damage of

22  Plaintiff Headley and others similarly situated.

23   5)    Plaintiff is uncertain with respect to the identity of

24  all persons or entities responsible and liable for this wrongful

25  conduct and names said potential parties as Doe Defendants as

26  authorized by California law.

27   6)    Defendant CSI, related Scientology entities and

28  potential Doe Defendants, apparently claim that workers such as

2

PLAINTIFF'S COMPLAINT

12

1  Plaintiff Headley are not covered by the labor laws.  The excuse
2  usually involves some sort of claim for religious exemption
3  and/or blanket waiver of legal rights by CSI's entire work force.
4  While the question of Scientology's status as a bona fide
5  religion is subject to serious dispute, especially when one
6  studies Scientology's history of adopting a religions cloaking to
7  avoid governmental regulation and scrutiny, the religion issue is
8  not dispositive of the labor law issue.  The great weight of
9  authority is contrary to Defendant CSI's self-granted immunity
10 from state and federal labor laws.  This authority includes
11 decisions of the U.S. and California Supreme Courts and the Ninth
12 Circuit Court of Appeals.  Several of the leading and more
13 pertinent decisions are referenced and cited herein.

14      7)   Defendant CSI misconstrues what it can get away with in
15 the name of religion.  The extent to which this is intentional
16 and malicious, or biased false hope, is uncertain to Plaintiff at
17 this time.  Internal CSI documents acknowledge that Scientology
18 is subject to federal labor laws and California education laws
19 with respect to at least minors under its control.  Other
20 internal documents reflect an assumption that Scientology is
21 "arguably" exempt from the labor laws because it is a "church",
22 which is recited by an in-house lawyer without any analysis or
23 legal authority.  Scientology tax documents admit that its book
24 publishing business is subject to federal minimum wage laws.
25 CSI's division, Golden Era Productions is similar to the
26 publishing business acknowledged by CSI to be subject to minimum
27 wage laws, however, CSI wrongly and arbitrarily refuses to pay
28 workers such as Plaintiff legal wages.

8)    This case involves unlawful business practices, including labor code violations, and presents a claim under the California Unfair Compensation Law.  Business and Professions Code §17200 makes essentially all business torts and statutory violations, including violations of federal law, independently actionable under the California body of law on unfair competition and business practices.  The California Supreme Court has expressly ruled that labor code violations are actionable under this law.  The difference between what was paid as wages and what should have been paid under minimum wage and overtime laws qualifies as restitution damages under B&P Code §17203. <u>Cortez v. Purolator Air Filtration Products Co.</u> 23 Cal.4th 163, 177-179 (2000)

9)    The core facts cannot seriously be disputed.  Plaintiff worked for CSI from 1989 to 2005 and was not paid minimum wage or overtime.  Plaintiff worked long hours including 100+ hour weeks at below minimum wage, no compensation for overtime and insufficient time off.  The work week was seven days not six as required by law.  When Plaintiff worked for CSI, it essentially ignored the law on minors and workers.  Plaintiff is informed and believes that CSI continues to ignore labor laws.

10)    The U.S. Supreme Court has ruled that non-profit and religious entities must abide by labor laws including laws on wages and employment of minors.  In the <u>Alamo</u> case (cited below), the court also found that persons performing work for a religious entity are entitled to the protection of the labor laws irrespective of whether the workers want or do not want the protection of the labor laws, and irrespective of whether the

4

PLAINTIFF'S COMPLAINT

14

1  workers consider themselves to be employees.  The protection of

2  labor laws cannot be waived.  Persons working with the

3  expectation of even slight reward (sustenance) are employees as a

4  matter of economic reality according to the U.S. Supreme Court.

5  Tony & Susan Alamo Foundation v. Sec. of Labor, 471 US 290

6  (1985).  In accord, Mitchell v. Pilgrim Holiness Church Corp. 210

7  F.2d 879 (7th Cir. 1954). See also, Prince v. Massachusetts, 321

8  U.S. 158 (1944) (Child Labor).

9       11)  The California Supreme Court and the Ninth Circuit

10 Court of Appeals have confirmed in well-considered opinions that

11 religions are not exempt from laws of general applicability such

12 as the labor laws.  There is no constitutional right to exemption

13 from minimum wage and child labor laws.  See e.g. Elvig v. Calvin

14 Presbyterian Church, 397 F.3d 790, 792 (9th Cir. 2003) (citing 3

15 U.S. Supreme Court cases) and North Coast Women's Care Medical

16 Group, Inc. v. Superior Court, 44 Cal. 4th 1145 (2008).

17                **ALLEGATIONS COMMON TO ALL COUNTS**

18      12)  Plaintiff Marc Headley worked for CSI from 1989 to

19 January, 2005.  Generally, Plaintiff worked for an unincorporated

20 division of CSI known as Golden Era Productions.  Plaintiff's

21 paycheck's came from CSI.  Plaintiff's duties were secular and

22 commercial in nature.  Golden Era Productions is a business

23 enterprise operated with the primary directive to "keep the stats

24 up" and "make money".  Plaintiff worked on films and promotional

25 materials that were sold, licensed to various Scientology

26 organizations, or used for the commercial purposes of Golden Era

27 Productions/CSI.  Plaintiff is informed and believes that films

28 and other products still in use may have been made with illegal

                                5
                        PLAINTIFF'S COMPLAINT

                               15

1 | minor labor, and may be subject to seizure as "hot goods" under

2 | the child labor laws and FTC regulations.

3 |     13)   During his time of toil at CSI, Plaintiff was told he

4 | had essentially no rights as an employee.  Plaintiff was forced

5 | to sign various documents over the years under duress and not

6 | given copies of said documents.  Plaintiff suspects that

7 | documents forced upon him are replete with nonsensical and

8 | unconscionable terms that were obtained by duress and

9 | intimidation and for which there was no consideration or "meeting

10 | of the minds".  Plaintiff continued to work under unlawful

11 | conditions, and signed whatever was demanded, in large part,

12 | because he was wrongly convinced by Defendant CSI into believing

13 | that he had no legal rights or viable options.  At times herein

14 | material, Plaintiff had insufficient funds to stop working for

15 | DCSI because of the low pay.  CSI enslaves its employees through

16 | "PR", intimidation, forced signatures on oppressive documents and

17 | enforced poverty.

18 |     14)   While working for Defendant CSI, Plaintiff Headley's

19 | life was effectively controlled by the management of the

20 | Scientology enterprise and Defendant CSI.  The refusal of

21 | Scientology and CSI to pay its workers minimum wage and the

22 | practice of working employees to exhaustion creates a compliant

23 | labor force.  For example, to keep him in line, Plaintiff was

24 | assaulted by the leader of the Scientology enterprise.  This was

25 | a show of power and domination.  Plaintiff observed such heavy-

26 | handed tactics used against his co-workers.  To complain would

27 | have been futile at the time.  Witnesses to the assault would

28 | have been intimidated into silence.  Scientology controls its

6

PLAINTIFF'S COMPLAINT

1  workers by depriving them of a living wage and keeping them
2  dependant upon the Scientology enterprise for the basic
3  necessities of life.

4      15)   Defendant CSI, and Does, have a duty to inform
5  employees of their rights under the labor laws.  Not only did CSI
6  not advise employees of rights, CSI mislead its employees about
7  their rights.  Workers such as Plaintiff Headley were told that
8  Scientology does not have to pay them minimum wage or give them
9  any rights because "it's a church", and/or workers have waived
10 rights.  Plaintiff came to accept such misinformation while
11 working for CSI.  Defendant CSI has been on notice that workers
12 are entitled to at least the protection of Federal labor laws
13 since the publication of the <u>Alamo</u> case in 1985, however, CSI has
14 failed to follow the labor laws or give its workers proper notice
15 of their true legal rights under labor laws.  <u>Tony & Susan Alamo</u>
16 <u>Foundation v. Sec. of Labor</u>, 471 US 290 (1985).

17     16)   Whether it is more accurately described as a religion,
18 or an entity that uses religious cloaking to mask its misdeeds,
19 Defendant CSI must follow the law.  The First Amendment does not
20 exempt religious organizations from minimum wage and child labor
21 laws.  <u>Elvig v. Calvin Presbyterian Church</u>, 397 F.3d 790, 792
22 (9th Cir. 2003).  In accord, <u>North Coast Women's Care Medical</u>
23 <u>Group, Inc. v. Superior Court</u>, 44 Cal 4th 1145 (2008).  Defendant
24 had a duty owed to Plaintiff and other employees similarly
25 situated to comply with the state and federal labor laws.
26 Defendant intentionally, consciously and wrongfully made a
27 tactical decision to ignore the labor laws, take its chances with
28 a compliant and intimidated work force, and hope that the running

7
PLAINTIFF'S COMPLAINT

17

1  of statutes of limitations would in the long run give CSI

2  millions of dollars.

3      17)  Defendant CSI has claimed that Plaintiff Headley, and

4  apparently all of CSI's workers, have waived any right to the

5  protection of the labor laws; however, as a matter of state and

6  federal law, such rights cannot be waived.  The <u>Alamo</u> case cited

7  above is one of numerous cases that establish that the rights in

8  question are <u>not</u> waivable.  Further, any such purported written

9  waiver would not be enforceable on numerous other grounds

10 including duress, menace, illegality and lack of consideration.

11 Plaintiff was entitled to at least minimum wage and overtime for

12 his work even if there was an agreement to the contrary. (Labor

13 Code §1194)  Further, it is a misdemeanor for an employer to

14 require a waiver of compensation rights.   (Labor Code §206)

15 Regarding federal laws, the U.S. Supreme Court has also ruled

16 that the protections of the federal labor laws cannot be abridged

17 or waived in <u>Barrentine v. Arkansas-Best Freight System</u>, 450 U.S.

18 728, 740 (1981).  Under controlling laws, Defendant had a non-

19 waivable duty to comply with wage and minor labor laws.

20 Defendant breached said duty.  Further, Plaintiff Headley made no

21 voluntary or effective waiver of pertinent rights.

22     18)  Pursuant to California Minimum Wage Order NW-2007,

23 Defendant CSI was required to pay Plaintiff minimum wage and

24 overtime compensation without any deduction for the purported

25 value of room and board furnished to Plaintiff.  In computing

26 unpaid wages, therefore, Plaintiff is entitled to recover the

27 full amount of minimum wages, overtime and penalties due without

28 offset.  In any event, the real value of the meager existence

1  provided by CSI would not satisfy the minimum wage and overtime
2  requirements.  Plaintiff computes his average wage at CSI to be
3  about thirty-nine cents (39¢) per hour.

4       19)  In attempting to control, and underpay, its employees
5  such as former employee Plaintiff Marc Headley, Defendant CSI and
6  Doe Defendants, engaged in unlawful, unfair and fraudulent
7  business practices.  These improper activities include, but are
8  not limited to, a) intimidation by assault, threat and menace, b)
9  failure to pay minimum wage, c) failure to pay overtime, d)
10  failure to give proper breaks, rest periods and days off, e)
11  depriving minors of required education, f) working minor
12  employees illegal hours at illegal tasks, g) not paying full
13  wages upon termination and h) typically demanding releases for
14  wages due or to become due in violation of Labor Code §203(i)
15  refusing employees access to their files including the practice
16  of demanding that workers sign all requested documents upon
17  demand while refusing to give workers copies of the documents.

18       20)  Defendant CSI has engaged in additional unlawful and
19  unfair business practices actionable under B&P Code §17200.
20  Further investigation may disclose additional violations of law
21  and unfair business practices committed by Defendant.  In
22  addition to the unlawful and unfair practice described above,
23  Defendant has committed the following unlawful or unfair
24  practices:

25       a)   Retaliation against Plaintiff and others for
26            pursuing labor claims, which is a violation of Labor Code
27            1102.5 and 98.6.
28

PLAINTIFF'S COMPLAINT

19

1     b)   Upon termination of employment, instead of paying

2 wages due, CSI usually claims that the servant owes the

3 master for services rendered.  In addition to being a

4 further attempt to pay less than legal wages for labor

5 performed, and being an unconscionable and unenforceable

6 claim, the threat of a "Freeloader Debt" is used to

7 intimidate and coerce employees into continuation of

8 working under unlawful conditions.

9     c)   Defendant CSI and related Scientology entities

10 have for years subjected minors to illegal labor and

11 deprived them of a proper education for years.  Apparently

12 realizing that this was clearly illegal, Scientology

13 adopted a different practice.  The enterprise orders its

14 pregnant employees to have abortions, which would qualify

15 as an extreme unfair business practice actionable under B&P

16 Code §17200 and other statutes.

17 **FIRST CAUSE OF ACTION FOR VIOLATION**

18 **OF B&P CODE §17200 ET. SEQ**

19    21)  Plaintiff Headley realleges and incorporates the above

20 paragraphs in their entirety.

21    22)  Defendant CSI and Doe Defendants have engaged in

22 illegal and unfair business practices in violation of B&P Code

23 §17200, including but not limited to violations of state and

24 Federal labor laws.  The California Supreme Court has held that

25 failure to pay proper wages is actionable and that restitution of

26 wages unlawfully withheld, or not paid when due, is a remedy

27 authorized by B&P Code §17200 and 17203.  <u>Cortez v. Purolator Air</u>

28 <u>Filtration Products Co.</u> 23 Cal.4th 163, 177-179 (2000)

PLAINTIFF'S COMPLAINT

1    23)   Plaintiff Headley has suffered injury in fact and has
2   standing to sue under B&P Code §17203 for himself and as a
3   representative of persons also entitled to restitution of unpaid
4   wages, overtime and waiting penalties.   Among other things, upon
5   termination of his employment in 2005, Plaintiff was entitled to
6   timely payment of all wages due.   At the time of termination,
7   Defendant CSI legally owed Plaintiff at least three years of back
8   pay, which comes to an amount well in excess of $25,000 and which
9   will be sought in accordance with proof at trial.

10    24)   Pursuant to B&P Code §17203, this court is empowered to
11   enjoin the illegal conduct of Defendant CSI described herein and
12   issue orders to effectuate restitution of back pay to other
13   employees of CSI.

14    25)   Plaintiff brings this action for the public good and is
15   therefore entitled to recover reasonable attorney's fees and
16   costs.   (C.C.P. 1021.5)

17    **SECOND CAUSE OF ACTION FOR UNPAID WAGES AND PENALTIES**

18    26)   Plaintiff Headley realleges all paragraphs above in
19   support of his second cause of action for unpaid wages, penalties
20   and other economic damages.

21    27)   Plaintiff Headley worked for Defendant CSI from 1989 –
22   2005.   His average wage was less than fifty cents (50¢) per hour.

23    28)   Plaintiff Headley is entitled to recover unpaid and
24   withheld legal wages including minimum wages unpaid, overtime
25   wages and waiting penalties all authorized by the California
26   Labor Code, which is in excess of $25,000 and will be sought in
27   accordance with proof at trial.
28

11

PLAINTIFF'S COMPLAINT

21

1       29)   Pursuant to the Labor Code, Plaintiff Headley is

2    entitled to an award for reasonable attorney's fees and costs.

3    ## THIRD CAUSE OF ACTION FOR REFORMATION

4    ## OF ORAL EMPLOYMENT CONTRACT

5       30)   Plaintiff Headley realleges and incorporates all

6    allegations made above and herein in support of this cause of

7    action.

8       31)   Plaintiff unknowingly entered into and worked under an

9    unlawful employment contract with Defendant CSI, which called for

10   illegal wages and unlawful working conditions.

11      32)   Plaintiff did so under mistakes of law and fact, and by

12   reason of misrepresentations and improper and unconscionable

13   demands made upon him on the part of Defendant CSI.  Plaintiff

14   has only recently learned of full and true nature of said

15   mistakes on his part and misrepresentation of CSI's part.

16      33)   Recently, Plaintiff has learned that he was working for

17   CSI under an unlawful and unfair contract of employment, in

18   violation of his rights, and contributing to the unjust

19   enrichment of Defendant CSI.  Plaintiff seeks to reform his

20   previous compensation agreement to comply with applicable labor

21   laws.

22      34)   As reformed to comply with law, and to correct past

23   mistake, unjust enrichment and/or misrepresentation and deceit on

24   the part of CSI, Plaintiff is due minimum wage and overtime under

25   his reformed and legal terms of employment with Defendant CSI.

26   Defendant CSI has breached its duties under a lawful employment

27   relationship and refused to pay lawful wages, which damages will

28   be sought in accordance with proof at trial.

12

22

WHEREFORE, Plaintiff requests:

1)  A jury trial;

2)  Restitution according to proof under the First Cause of Action;

3)  Back pay, wages, penalties and all recoverable economic losses under the Second Cause of Action and/or Third Cause of Action;

4)  An award of reasonable attorney's fees computed with an appropriate lodestar in consideration of the difficult and litigious nature of the CSI Defendant;

5)  Such other relief as the court may deem just including injunctive and representative relief under B&P Code §17203.

January 5, 2009

BARRY VAN SICKLE
Attorney for Plaintiff
MARC HEADLEY

13

PLAINTIFF'S COMPLAINT

**EXHIBIT B**

1  BARRY VAN SICKLE - BAR NO. 98645
   1079 Sunrise Avenue
2  Suite B-315
   Roseville, CA  95661
3  Telephone: (916) 549-8784
   E-Mail:  bvansickle@surewest.net
4
   Attorney for Plaintiff
5  MARC HEADLEY
6

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 13 2009

JOHN A. CLARKE CLERK

BY NANCY ALVAREZ, DEPUTY

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     COUNTY OF LOS ANGELES

9

10  MARC HEADLEY,                    ) CASE NO. BC404958
                                     )
11              Plaintiff,           ) **PLAINTIFF'S FIRST AMENDED**
                                     ) **COMPLAINT FOR:**
12      vs.                          )
                                     )
13  CHURCH OF SCIENTOLOGY            ) 1) UNFAIR PRACTICES UNDER
    INTERNATIONAL, a corporate       )    B&P §17200 ET. SEQ
14  entity, AND DOES 1 - 20          ) 2) LABOR CODE VIOLATIONS
                                     ) 3) REFORMATION OF EMPLOYMENT
15              Defendants.          )    AGREEMENT
                                     ) 4) HUMAN TRAFFICKING
16                                   ) 5) INVASION OF PRIVACY AND
                                     )    CONSTITUTIONAL RIGHTS
17                                   )
                                     )
18                                   ) ASSIGNED TO THE HONORABLE JANE
                                     ) L. JOHNSON, DEPT. 56
19

20                        __INTRODUCTION__

21      1)   This case challenges Scientology's long-standing

22  practice of evading laws and depriving workers of basic human

23  rights.  In particular, Plaintiff complains that he worked long

24  hard hours for illegal wages and was subjected to violations of

25  personal rights and liberties by Defendant for purposes of

26  obtaining forced labor.  Since leaving the Scientology

27  enterprise, Plaintiff has reported Defendant's labor law

28  violations to the California Labor Commission and filed the

                                1
                    FIRST AMENDED COMPLAINT

24

1   initial Complaint in this action. . Defendant has wrongfully

2   retaliated against Plaintiff for these proper and privileged

3   actions.

4        2)   Plaintiff's case has a solid legal foundation.  It is

5   supported by statutory law and decisions of the U.S. Supreme

6   Court, the California Supreme Court and the Ninth Circuit Court

7   of Appeals.  Defendant's case appears to be based on the premise

8   that its status as a tax-exempt entity provides an impermeable

9   shield against claims.  In particular, Defendant CSI, which is

10  part of the Scientology enterprise ("Scientology"), typically

11  claims First Amendment or waiver type defenses to ongoing

12  violations of state and federal law.  These purported defenses to

13  otherwise indisputably illegal conduct will not withstand

14  scrutiny and analysis.  The law is well settled that Defendant is

15  subject to labor laws and other neutral laws of general

16  applicability.  Further, the rights in question cannot be waived.

17  Fundamental rights and the protection of the labor laws cannot be

18  lost with the stroke of a pen or word processor.  (Authorities

19  are referenced and cited below.)

20       3)   The goals of this case include forcing the Defendant to

21  comply with labor laws and clearing the path for workers of

22  Scientology organizations to obtain the compensation due them

23  under state and federal labor laws.  Plaintiff seeks payment for

24  his work at minimum wage, overtime pay and other remedies

25  authorized by law.

26       4)   Defendant Church of Scientology International (CSI)

27  represents itself to be the "Mother Church" of Scientology.  CSI

28  has its principal office and apparent headquarters in Los

1  Angeles, California.  The County of Los Angeles is an appropriate
2  venue for this action.

3      5)   At times herein material, and continuing, Defendant CSI
4  was and is an enterprise conducting business, and an employer
5  paying employees to conduct said business, within the State of
6  California and in interstate commerce.  Accordingly, said
7  Defendant is subject to California and Federal laws concerning
8  their work force, working conditions, business practices, minimum
9  wage, payment for overtime and the protection of minors.  As
10 alleged in more detail herein, Defendant has systematically
11 ignored and violated said laws to the damage of Plaintiff Headley
12 and others similarly situated.

13     6)   Plaintiff is uncertain with respect to the identity of
14 all persons or entities responsible and liable for this wrongful
15 conduct and names said potential parties as Doe Defendants 1 - 10
16 as authorized by California law.  Doe Defendants 11 - 20 are
17 those potential Defendants who may participate in wrongful
18 retaliation, witness intimidation and fraudulent transfer or
19 concealment of assets to avoid payment of judgment in this case.

20     7)   Defendant CSI, related Scientology entities and
21 potential Doe Defendants claim that workers such as Plaintiff are
22 not entitled to the benefits and protections of the labor laws.
23 The weight of authority is contrary to Defendant's self-granted
24 immunity from state and federal labor laws.  As stated by the
25 California Supreme Court, "... [to] permit religious beliefs to
26 excuse acts contrary to law... would be to make professed doctrines
27 of religious belief superior to the law of the land, and in
28 effect to permit every citizen to become a law unto himself."

3

FIRST AMENDED COMPLAINT

26

1 <u>Catholic Charities of Sacramento, Inc. v. Superior Court</u> (2004)

2 32 Cal.4[th] 527, 541 (Citing the U.S. Supreme Court).

3 Historically, the Defendant CSI has considered itself just as

4 described by this court – a law unto itself.

5     8)   The U.S. Supreme Court has ruled that non-profit and

6 religious entities must abide by labor laws including laws on

7 wages and employment of minors. In the <u>Alamo</u> case (cited below),

8 the court also found that persons performing work for a religious

9 entity are covered by the labor laws even if they claim not to

10 want or qualify for the protection of the labor laws. Workers of

11 religious entities are protected by the labor laws irrespective

12 of whether workers consider themselves to be employees. The

13 protection of labor laws cannot be waived. For purposes of

14 minimum wage and child labor laws, employment is evaluated in the

15 context of economic reality. <u>Tony & Susan Alamo Foundation v.</u>

16 <u>Sec. of Labor</u>, (1985) 471 US 290. In accord, <u>Mitchell v. Pilgrim</u>

17 <u>Holiness Church Corp.</u> 210 F.2d 879 (7th Cir. 1954). See also,

18 <u>Prince v. Massachusetts</u>, (1944) 321 U.S. 158 (Child Labor).

19     9)   The California Supreme Court and the Ninth Circuit

20 Court of Appeals have also found in well-considered opinions that

21 religions are not exempt from laws of general applicability such

22 as the labor laws. There is no constitutional right to exemption

23 from minimum wage and child labor laws. See e.g. <u>Elvig v. Calvin</u>

24 <u>Presbyterian Church</u>, 397 F.3d 790, 792 (9th Cir. 2003) (citing 3

25 U.S. Supreme Court cases) and <u>North Coast Women's Care Medical</u>

26 <u>Group, Inc. v. Superior Court</u>, (2008) 44 Cal.4[th] 1145.

27     10)  For purposes of the minimum wage and similar laws, the

28 test of employment looks to "economic reality" not labels, titles

4

FIRST AMENDED COMPLAINT

27

1  or a self-serving paper trail crafted by lawyers trying to

2  minimize or obscure Defendant's legal obligations and

3  liabilities.  An "employee" who is called an independent

4  contractor, a volunteer or religious worker is still an employee.

5  As the court observed when evaluating employment in Estrada v.

6  FedEx Ground Package System, Inc. (2007) 154 Cal.App.4th 1, 10:

7  "…[I]f it looks like a duck, walks like a duck, swims like a duck

8  and quacks like a duck, it is a duck."  Simply put, if it looks

9  like employment and has the attributes of employment, it is

10  employment.  The protections of the labor laws cannot be lost and

11  the underlying reality is not changed, by Scientology's obsessive

12  quest for self-serving documents.  See e.g. Civil Code §3513,

13  Labor Code 1194, County of Riverside v. Superior Court (Madrigal)

14  (2002) 27 Cal.4th 793  and Abramson v. Juniper Networks, Inc.

15  (2004) 115 Cal.App.4th 638

16      11)  Under the principles applied by the Alamo court, the

17  parties' perceptions and documents do not control or govern

18  applications of the labor laws.  That would effectively make

19  minimum wage and other labor laws optional, not mandatory, which

20  is not the law.  Also, the courts have recognized the strong

21  public policy behind minimum wage, overtime and mandatory off-

22  time laws.  The labor laws protect the weak employee from being

23  exploited by the stronger employer and against the "evils of

24  overwork".  Gentry v. Superior Court (Circuit City Stores, Inc.)

25  (2007) 42 Cal.4th 443 at 445-6.  Plaintiff was dependant upon his

26  work and labor for Defendant, which satisfies the economic

27  reality test.  As stated in Real v. Driscoll Strawberry

28  Associates, Inc. 603 F.2d 748, 754 (9th Cir 1979) "Courts have

5

FIRST AMENDED COMPLAINT

28

1   adopted an expansive interpretation of the definitions of

2   "employer" and "employee" under the FLSA, in order to effectuate

3   the broad remedial purposes of the Act…The common law concepts of

4   "employee" and "independent contractor" are not conclusive

5   determinants of the FLSA's coverage.  Rather, in the application

6   of social legislation employees are those who <u>as a matter of</u>

7   <u>economic reality</u> are dependent upon the business to which they

8   render service." (Emphasis in original)

9        12)  The core facts cannot be seriously disputed.  Plaintiff

10  worked for Defendants from 1989 to 2005 and was not paid minimum

11  wage or overtime.  Plaintiff worked long hours including 100+

12  hour weeks at below minimum wage, no compensation for overtime

13  and insufficient time off.  The work week was seven days not six

14  as required by law.  Plaintiff is informed and believes that

15  Defendants continue to ignore labor laws.

16       13)  The economic reality in which Plaintiff found himself

17  when working for Defendant CSI was that he was totally dependant

18  upon Defendant for sustenance and income.  Plaintiff was not a

19  part-time volunteer who had other work and could come and go as

20  he pleased.  The extreme opposite was the case.  Plaintiff had a

21  rigid work schedule.  Plaintiff's activities, time, location and

22  work were controlled by Defendant employers.  Plaintiff could

23  qualify for "bonuses" if production was up, and could have his

24  compensation docked if production was down.  Plaintiff could have

25  his pay docked if he did not take proper care of her work

26  uniform.  Plaintiff's compensation was based, at least

27  theoretically, in part by his job performance.  Plaintiff was not

28  free to leave Gold Base.  He needed someone's permission to take

6

FIRST AMENDED COMPLAINT

29

1  time off or to do most anything.  He was an employee as a matter

2  of economic reality.

3      14)  This case asserts labor code violations, and other

4  improper, illegal and unfair business practices, in a first cause

5  of action brought under Business and Professions Code §17200.

6  The operative statute underlying the first cause of action may be

7  triggered by essentially all business torts and statutory

8  violations, including violations of federal law, which are

9  independently actionable under the California body of law on

10  unfair competition and business practices.  The California

11  Supreme Court has expressly ruled that labor code violations are

12  actionable under this law.  The difference between what was paid

13  as wages and what should have been paid under minimum wage and

14  overtime laws qualifies as restitution damages under B&P Code

15  §17203.  Cortez v. Purolator Air Filtration Products Co. (2000) 23

16  Cal.4th 163, 177-179.

17               **ALLEGATIONS COMMON TO ALL COUNTS**

18      15)  Plaintiff Marc Headley worked for CSI from 1989 to

19  January, 2005.  When initially recruited into employment with the

20  Scientology enterprise, Plaintiff was told he would be paid

21  minimum wage.  Plaintiff was in fact paid minimum wage for his

22  first six months of employment.  Plaintiff was then transferred

23  to a different position and told he would no longer be paid

24  minimum wage.  Plaintiff was a minor at the time.  He signed his

25  first purported employment contract at age eleven.

26      16)  Generally, Plaintiff worked for an unincorporated

27  division of CSI known as Golden Era Productions.  Plaintiff's

28  wages came from CSI.  Plaintiff's duties were secular and

                                    7

1  commercial in nature.  Golden Era Productions is a business
2  enterprise operated with the primary directive to "keep the stats
3  up" and "make money".  Plaintiff worked on films and promotional
4  materials that were sold, licensed to various Scientology
5  organizations, or used for the commercial purposes of Golden Era
6  Productions/CSI.  Plaintiff is informed and believes that films
7  and other products still in use may have been made with illegal
8  minor labor, and may constitute "hot goods" under the child labor
9  laws and FTC regulations.

10     17)  While working at CSI, Plaintiff was told he had
11  essentially no rights as an employee.  Plaintiff was forced to
12  sign various documents over the years under duress and not given
13  copies of said documents.  Plaintiff suspects that documents
14  forced upon him are replete with nonsensical and unconscionable
15  terms that were obtained by duress and intimidation and for which
16  there was no consideration or "meeting of the minds".  Plaintiff
17  continued to work under unlawful conditions, and signed whatever
18  was demanded, in large part, because he was wrongly convinced by
19  Defendant CSI into believing that he had no legal rights or
20  viable options.  At times herein material, Plaintiff had
21  insufficient funds to stop working for CSI because of the low
22  pay.  CSI enslaves its employees through coercion, deceit, fear
23  of reprisal, intimidation, forced signatures on oppressive
24  documents and enforced poverty.

25     18)  While working for Defendant CSI, Plaintiff Headley's
26  life was effectively controlled by the management of the
27  Scientology enterprise and Defendant CSI.  The refusal of
28  Scientology and CSI to pay its workers minimum wage and the

8

FIRST AMENDED COMPLAINT

31

1  practice of working employees to exhaustion creates a compliant
2  labor force.  For example, to keep him in line, Plaintiff was
3  assaulted by the leader of the Scientology enterprise.  This was
4  a show of power and domination.  Plaintiff observed such heavy-
5  handed tactics used against his co-workers.  To complain would
6  have been futile at the time.  Witnesses to the assault would
7  have been intimidated into silence.  Scientology controls its
8  workers by depriving them of a living wage and keeping them
9  dependant upon the Scientology enterprise for the basic
10  necessities of life.

11      19)  Defendant CSI, and Does, have a duty to inform
12  employees of their rights under the labor laws.  Not only did CSI
13  not advise employees of rights, CSI mislead its employees about
14  their rights.  Workers such as Plaintiff Headley were told that
15  Scientology does not have to pay them minimum wage or give them
16  any rights because "it's a church", and/or workers have waived
17  rights.  Plaintiff came to accept such misinformation while
18  working for CSI.  Defendant CSI has been on notice that workers
19  are entitled to at least the protection of Federal labor laws
20  since the publication of the Alamo case in 1985, however, CSI has
21  failed to follow the labor laws or give its workers proper notice
22  of their true legal rights under labor laws.  Tony & Susan Alamo
23  Foundation v. Sec. of Labor, 471 US 290 (1985).

24      20)  The First Amendment does not exempt religious
25  organizations from minimum wage and child labor laws.  Elvig v.
26  Calvin Presbyterian Church, 397 F.3d 790, 792 (9th Cir. 2003).
27  In accord, North Coast Women's Care Medical Group, Inc. v.
28  Superior Court, 44 Cal 4th 1145 (2008).  Defendant had a duty

9

FIRST AMENDED COMPLAINT

32

1  owed to Plaintiff and other employees similarly situated to
2  comply with the state and federal labor laws.  Defendant
3  intentionally, consciously and wrongfully made a tactical
4  decision to ignore the labor laws, take its chances with a
5  compliant and intimidated work force, and hope that the running
6  of statutes of limitations would in the long run save CSI
7  millions of dollars.

8      21)  Defendant CSI has claimed that Plaintiff Headley, and
9  apparently all of CSI's workers, have waived any right to the
10 protection of the labor laws; however, as a matter of state and
11 federal law, such rights cannot be waived.  The Alamo case cited
12 above is one of numerous cases that establish that the rights in
13 question are not waivable.  Further, any such purported written
14 waiver would not be enforceable on numerous other grounds
15 including duress, menace, illegality and lack of consideration.
16 Plaintiff was entitled to at least minimum wage and overtime for
17 his work even if there was an agreement to the contrary.  (Labor
18 Code §1194)  Not only is a release of proper wages null and void,
19 it is a misdemeanor for an employer to require a release of
20 compensation rights.  (Labor Code §206.5) Regarding federal laws,
21 the U.S. Supreme Court has also ruled that the protections of the
22 federal labor laws cannot be abridged or waived in Barrentine v.
23 Arkansas-Best Freight System, 450 U.S. 728, 740 (1981).  Under
24 controlling laws, Defendant had a non-waivable duty to comply
25 with wage and minor labor laws.  Defendant breached said duty.
26 Further, Plaintiff Headley made no voluntary or effective waiver
27 of pertinent rights.
28

FIRST AMENDED COMPLAINT

1    22)   Pursuant to California Minimum Wage Order NW-2007,

2   Defendant CSI was required to pay Plaintiff minimum wage and

3   overtime compensation without any deduction for the purported

4   value of room and board furnished to Plaintiff.   In computing

5   unpaid wages, therefore, Plaintiff is entitled to recover the

6   full amount of minimum wages, overtime and penalties due without

7   offset.   In any event, the real value of the meager existence

8   provided by CSI would not satisfy the minimum wage and overtime

9   requirements.   Plaintiff computes his average wage at CSI to be

10  about thirty-nine cents (39¢) per hour.

11   23)   In attempting to control, extort forced labor and evade

12  labor laws with respect to its employees, such as former employee

13  Plaintiff Headley, Defendant CSI and Doe Defendants, engaged in

14  unlawful, unfair and fraudulent business practices.   These

15  improper activities include, but are not limited to, a)

16  intimidation by assault, threat, menace and invasion of privacy,

17  b) failure to pay minimum wage, c) failure to pay overtime, d)

18  failure to give proper breaks, rest periods and days off, e)

19  depriving minors of required education, f) working minor

20  employees illegal hours at illegal tasks, g) not paying full

21  wages upon termination, h) typically demanding releases for wages

22  due or to become due in violation of the Labor Code, i) refusing

23  employees access to their files, j) coercing workers to sign all

24  requested documents upon demand and refusing to give workers

25  copies of required documents and k) failing to give employees

26  proper notice of their rights to the protection of the labor

27  laws, which is required by law.

28

11

FIRST AMENDED COMPLAINT

34

1    24)   Defendant CSI has engaged in additional unlawful and
2  unfair business practices actionable under B&P Code §17200.
3  Further investigation may disclose additional violations of law
4  and unfair business practices committed by Defendant.   In
5  addition to the unlawful and unfair practice described above, one
6  or more Defendants has committed the following unlawful or unfair
7  practices:

8         a)    Retaliation against Plaintiff's family business
9       and others for pursuing labor claims, which is a violation
10      of Labor Code 1102.5 and 98.6, and intimidation of
11      potential witnesses.

12        b)    Upon termination of employment, instead of paying
13      wages due, CSI claims that the servant owes the master for
14      services rendered.   In addition to being a further attempt
15      to pay less than legal wages for labor performed, and being
16.     an unconscionable and unenforceable claim, the threat of a
17      "Freeloader Debt" is used to intimidate and coerce
18      employees into continuation of working under unlawful
19      conditions.   At the conclusion of Plaintiff's employment
20      with Defendant, Scientology asserted a "Freeloader Debt"
21      against Plaintiff in the amount of approximately $86,000.
22      Plaintiff had worked hard for years for fifty cents (50¢)
23      per hour or less and supposedly owed his employer $86,000!
24      That is beyond outrageous.   The use of the "Freeloader
25      Debt" to force workers into the performance of labor for
26      Defendant is one of the threats and coercive tactics used
27      by Defendant to insure a continuation of forced labor from
28      employees.

12

FIRST AMENDED COMPLAINT

c)    Defendant CSI and related Scientology entities had for years subjected minors to illegal labor and deprived them of a proper education.  Defendant still recruits minors and works them illegally; however, current employees are ordered to have abortions.  The very young have no work value to Defendant and would interfere with mother's employment with Defendants.  Plaintiff was in fact a victim of this illegal and outrageous practice, in violation of her civil and Constitutional rights, which is actionable under B&P Code §17200 as an illegal business practice.

d)    Requiring that employees submit to interrogation on a primitive lie detector type device called an e-meter in violation of state and federal laws prohibiting mandatory use of lie detectors or similar devices in interrogations and examinations as a condition of continued employment.  See e.g., Labor Code §432.2.

e)    Engaging in Human Trafficking in violation of state and federal law as alleged in more detail below.

f)    Refusing to give employees copies of signed instruments in violation of Labor Code §432

g)    Violation of Plaintiff's inalienable rights guaranteed by Article 1, Section 1 of the California Constitution including Plaintiff's right to privacy and to make his own free choice on having children.  See e.g. <u>Hill v. National Collegiate Athletic Assn.</u> (1994) 7 Cal.4th 1, 15-16 and <u>American Academy of Pediatrics v. Lungren</u> (1997) 16 Cal.4th 307, 332-334.

13

FIRST AMENDED COMPLAINT

## FIRST CAUSE OF ACTION FOR VIOLATION

## OF B&P CODE §17200 ET. SEQ

25) Plaintiff Headley realleges and incorporates the above paragraphs in their entirety.

26) Defendant CSI and Doe Defendants have engaged in illegal and unfair business practices in violation of B&P Code §17200, including but not limited to violations of state and Federal labor laws. The California Supreme Court has held that failure to pay proper wages is actionable and that restitution of wages unlawfully withheld, or not paid when due, is a remedy authorized by B&P Code §17200 and 17203. Cortez v. Purolator Air Filtration Products Co. 23 Cal.4th 163, 177-179 (2000)

27) Plaintiff Headley has suffered injury in fact and has standing to sue under B&P Code §17203 for himself and as a representative of persons also entitled to restitution of unpaid wages, overtime and waiting penalties. Among other things, upon termination of his employment in 2005, Plaintiff was entitled to timely payment of all wages due. At the time of termination, Defendant CSI legally owed Plaintiff at least three years of back pay, which comes to an amount well in excess of $25,000 and which will be sought in accordance with proof at trial.

28) Pursuant to B&P Code §17203, this court is empowered to enjoin the illegal conduct of Defendant CSI described herein and issue orders to effectuate restitution of back pay to other employees of CSI.

29) Plaintiff brings this action for the public good and is therefore entitled to recover reasonable attorney's fees and costs. (C.C.P. 1021.5)

14

1       **SECOND CAUSE OF ACTION FOR UNPAID WAGES AND PENALTIES**

2       30)   Plaintiff Headley realleges all paragraphs above in

3 support of his second cause of action for unpaid wages, penalties

4 and other economic damages.

5       31)   Plaintiff Headley worked for Defendant CSI from 1989 –

6 2005.   His average wage was less than fifty cents (50¢) per hour.

7       32)   Plaintiff Headley is entitled to recover unpaid and

8 withheld legal wages including minimum wages unpaid, overtime

9 wages and waiting penalties all authorized by the California

10 Labor Code, which is in excess of $25,000 and will be sought in

11 accordance with proof at trial.

12       33)   Pursuant to the Labor Code, Plaintiff Headley is

13 entitled to an award for reasonable attorney's fees and costs.

14       **THIRD CAUSE OF ACTION FOR REFORMATION**

15          **OF ORAL EMPLOYMENT CONTRACT**

16       34)   Plaintiff Headley realleges and incorporates all

17 allegations made above and herein in support of this cause of

18 action.

19       35)   When recruited at age sixteen, Plaintiff was told he

20 would be paid minimum wage, and he was paid minimum wage for

21 approximately six months.   Thereafter, Plaintiff unknowingly and

22 initially incompetently as a minor, entered into and worked under

23 an unlawful employment contract with Defendant CSI, which called

24 for illegal wages and unlawful working conditions.

25       36)   Plaintiff did so under mistakes of law and fact,

26 initially by reason of his young age, and by reason of

27 misrepresentations and improper and unconscionable demands made

28 upon him on the part of Defendant CSI.   Plaintiff has only

15

FIRST AMENDED COMPLAINT

1  recently learned of full and true nature of said mistakes on his
2  part and misrepresentation of CSI's part.·

3      37)  Recently, Plaintiff has learned that he was working for
4  CSI under an unlawful and unfair contract of employment, in
5  violation of his rights, and contributing to the unjust
6  enrichment of Defendant CSI.  Plaintiff seeks to reform his
7  previous compensation agreement to comply with applicable labor
8  laws.
9  As reformed to comply with law, and to correct past mistake,
10 unjust enrichment and/or misrepresentation and deceit on the part
11 of CSI, Plaintiff is due minimum wage and overtime under his
12 reformed and legal terms of employment with Defendant CSI.
13 Defendant CSI has breached its duties under a lawful employment
14 relationship and refused to pay lawful wages, which damages will
15 be sought in accordance with proof at trial.

16             **FOURTH CAUSE OF ACTION FOR HUMAN TRAFFICKING**

17     38)  Plaintiff Headley realleges all paragraphs above in
18 support of his fourth cause of action for human trafficking.

19     39)  Penal Code Section 236.1 states in pertinent part as
20 follows: "(a) Any person who deprives or violates the personal
21 liberty of another…, to obtain forced labor or services, is
22 guilty of human trafficking."

23     40)  Subsection (d)(1) of Penal Code Section 236.1 clarifies
24 that a victim's personal liberty is deprived when there is a·
25 substantial and sustained restriction of another's liberty
26 accomplished through fraud, deceit, coercion, violence, duress,
27 menace, or threat of unlawful injury to the victim or to another
28 person[….]"

1    41)   Subsection (d) of Penal Code Section 236.1 defines

2  "forced labor or services" as "labor or services that are

3  performed or provided by a person and are obtained or maintained

4  through force, fraud, or coercion, or equivalent conduct that

5  would reasonably overbear the will of the person."

6    42)   California Civil Code Section 52.5 authorizes a civil

7  cause of action for victims of human trafficking, and which

8  defines human trafficking by reference to Penal Code Section

9  236.1.

10    43)   Defendant CSI deprived Plaintiff of his personal

11 liberty by substantially restricting his freedoms and by its

12 systematic practice of threatening, coercive tactics, which were

13 and are intended to restrict workers such as Plaintiff from

14 freedom of movement, thought and choice, and from obtaining

15 access to the outside world, deprive them of meaningful

16

17 competitive options, and subjugate the victim's will to that of

18 Defendant CSI.   Defendant thus deceitfully, fraudulently and

19 coercively secured, at the expense of Plaintiff's liberty, forced

20 labor at subhuman wages.

21    44)   At times herein material (circa 1986 – 2005), Plaintiff

22 Headley worked for Defendant at Scientology's international base

23 at Hemet, California. This facility, known as Gold Base, was a

24 secret base for many years. Most Scientologists did not know of

25 its existence.

26    45)   Gold Base resembles a prison camp. A razor-wire topped

27 fence encircles Gold Base with sharp inward pointing spikes to

28

17

FIRST AMENDED COMPLAINT

40

1   prevent escape. The gates are guarded at all times, preventing

2   employees from freely coming and going. Security guards patrol

3   the grounds, motion sensors are placed throughout, and

4   surveillance posts surround the perimeter, all of which are

5   intended to keep workers in the facility. One cannot leave

6   without permission and permission is seldom granted except to a

7   select few. Workers, including Plaintiff, are restricted to the

8   base and not permitted to leave.

9       46)   Plaintiff was deprived of normal liberties as a matter

10  of standard course. His freedom of movement was essentially

11  restricted to the Gold Base where he was confined.   Contact with

12  the outside world was prohibited, which prevented Plaintiff from

13  phoning or emailing for help. When Plaintiff's liberties weren't

14  being deprived, they were being violated by Defendant, who opened

15  and read Plaintiff's mail. Foreign workers had their passports

16  taken.

17

18      47)   Defendant would subject workers who fail to follow

19  orders to severe, sometimes corporal, punishment. Workers who are

20  caught trying to escape have been physically assaulted and

21  restrained. Plaintiff was aware of how Defendant mistreated those

22  who tried to escape.   Defendants employ one particular punishment

23  which involves relegating workers to a program known as the

24  Rehabilitation Project Force (or "RPF"). Workers assigned to the

25  RPF are subjected to a brutal regimen of manual labor, have no

26  freedom of movement and are subjected to almost total

27  deprivations of personal liberties.   Working conditions on the

28

18

FIRST AMENDED COMPLAINT

A1

1   RPF are so horrible that its mere existence serves as a deterrent

2   and intimidates workers, such as Plaintiff, into a state of fear

3   and mindless obedience to Defendants.  The RPF is arguably more

4   severe in punishment and violations of personal liberties than

5   solitary confinement in prison.

6       48)  The RPF, and similar punishments, put Plaintiff in a

7   difficult predicament.  At most times the safest course was to

8   submit to Defendant's controls, stay silent and endure the lesser

9   evil of eighteen hour days for less than a dollar per hour. Sleep

10  deprivation and poor nutrition were routine. Plaintiff remained

11  in reasonable fear and apprehension that his personal liberties

12  would be further violated in the future unless she continued to

13  provide services and labor to Defendants, on their terms, and as

14  ordered by Defendants.  When Plaintiff escaped Gold Base on a

15  motorcycle, Defendant's agents and security guards attempted to

16  run him down with their vehicle.  Plaintiff narrowly escaped

17  serious injury from this assault by Defendant's agents.

18

19      49)  Plaintiff has been severely damaged by reason of

20  providing forced labor to Defendants, which damages will be

21  sought in accordance with proof at trial and to the full extent

22  authorized by law, including Civil Code Section 52.5 et seq.

23              **FIFTH CAUSE OF ACTION FOR INVASION**

24             **OF PRIVACY AND CONSTITUTIONAL RIGHTS**

25      50)  Plaintiff Headley realleges all paragraphs above in

26  support of his fifth cause of action for invasion of privacy.

27      51)  In doing the acts complained of herein, Defendant CSI

28  wrongfully invaded Plaintiff's inalienable and Constitutional

                                19

1   right to privacy under Article 1, Section 1 of the California

2   Constitution and common law.

3        52)   Pursuant to applicable law, Plaintiff Headley is

4   entitled to damages for invasion of privacy according to proof,

5   which are requested.

6        WHEREFORE, Plaintiff requests:

7        1)   A jury trial;

8        2)   Restitution according to proof under the First Cause of

9             Action;

10       3)   Representative relief for others similarly situated as

11            authorized by B&P Code §17200 et. seq.;

12       4)   All damages authorized by Civil Code §52.5(a) et. seq.,

13            for human trafficking as alleged in the Third Cause of

14            Action, including actual damages, back pay, compensatory

15            damages, punitive damages, injunctive relief and treble

16            actual damages;

17       5)   An award of reasonable attorney's fees computed with an

18            appropriate lodestar in consideration of the difficult

19            and litigious nature of Defendants;

20       6)   Damages for invasion of privacy and other causes of

21            action according to proof;

22       7)   Such other relief as the court may deem just including

23            costs and attorney's fees.

24   February 17, 2009

25

26                                        BARRY VAN SICKLE
                                          Attorney for Plaintiff
27                                        MARC HEADLEY

28

                                20
                    FIRST AMENDED COMPLAINT

                         43

**EXHIBIT C**

CM-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Barry Van Sickle, Bar No. 98845<br>1079 Sunrise Avenue, Suite B-315<br>Roseville, CA 95661<br><br>TELEPHONE NO.: **(916) 549-8784**   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* bvansickle@surewest.net<br>ATTORNEY FOR *(Name):* Plaintiff Marc Headley | *FOR COURT USE ONLY*<br><br>**FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>FEB 13 2009<br><br>JOHN A. CLARKE, CLERK<br>BY NANCY ALVAREZ, DEPUTY |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles  90012<br>BRANCH NAME: Central | |

| | |
|---|---|
| PLAINTIFF/PETITIONER: Marc Headley | CASE NUMBER:<br>BC404958 |
| DEFENDANT/RESPONDENT: CHURCH OF SCIENTOLOGY INT'L, et. al. | JUDICIAL OFFICER:<br>JANE L. JOHNSON |
| **NOTICE OF RELATED CASE** | DEPT.:<br>56 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Claire Headley v. CHURCH OF SCIENTOLOGY INTERNATIONAL, et. al.
   b. Case number: BC405834
   c. Court: [✓] same as above
      [ ] other state or federal court *(name and address):*
   d. Department: 25
   e. Case type: [ ] limited civil [✓] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*
   f. Filing date: January 20, 2009
   g. Has this case been designated or determined as "complex?" [ ] Yes [✓] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      [✓] involves the same parties and is based on the same or similar claims.
      [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [✓] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         [ ] Additional explanation is attached in attachment 1h
   i. Status of case:
      [✓] pending
      [ ] dismissed [ ] with [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: [ ] same as above
      [ ] other state or federal court *(name and address):*
   d. Department:

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California | **NOTICE OF RELATED CASE** | Page 1 of 3<br>Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |

CM-015

| PLAINTIFF/PETITIONER: Marc Headley | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CHURCH OF SCIENTOLOGY INT'L, et. al. | BC404958 |

2. *(continued)*

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 2h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

3.  a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court *(name and address):*

    d. Department:

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 3h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: February 17, 2009

Barry Van Sickle

(TYPE OR PRINT NAME OF PARTY OR ATTORNEY) ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY)

*A5*

CM-015

| PLAINTIFF/PETITIONER: Marc Headley | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CHURCH OF SCIENTOLOGY INT'L, et. al. | BC404958 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   1079 Sunrise Avenue, Suite B-315
   Roseville, CA 95661

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:                      c. Name of person served:

      Street address:                                 Street address:
      City:                                           City:
      State and zip code:                             State and zip code:


   b. Name of person served:                      d. Name of person served:

      Street address:                                 Street address:
      City:                                           City:
      State and zip code:                             State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Date:

   _____          _____
   (TYPE OR PRINT NAME OF DECLARANT)             (SIGNATURE OF DECLARANT)

46

**EXHIBIT  D**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/27/09                                                          **DEPT.** 56

HONORABLE JANE L. JOHNSON        JUDGE | C. WRIGHT            DEPUTY CLERK
                                         S. WORKU, C.A.
HONORABLE                    JUDGE PRO TEM           ELECTRONIC RECORDING MONITOR

                          Deputy Sheriff | NONE              Reporter

---

2:00 pm | BC404958                    Plaintiff
                                      Counsel
          MARC HEADLEY                        NO APPEARANCES
                                      Defendant
              VS                      Counsel
          CHURCH OF SCIENTOLOGY
          INTERNATIONAL

---

**NATURE OF PROCEEDINGS:**

COURT'S ORDER RE: RELATED CASES

The Court finds that the following cases
BC404958 and BC405834
are related cases within the meaning of Los Angeles
Superior Court Local Rule 7.3(f).  For good cause
shown, said cases are assigned to Judge Jane Johnson
for all purposes.  All hearings in cases other than
the lead case are vacated.  Any presently calendared
motions in cases other than the lead case shall be
continued to the newly assigned department and shall
be renoticed by the moving party.  This order is made
without prejudice to the parties making a motion to
consolidate in the assigned department.

The moving party is ordered to serve notice of this
order (including hearings vacated, if necessary) by
mail forthwith on all interested parties within ten
(10) days of the receipt of this minute order.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
Feb 27, 2009 upon each party or counsel named below by
depositing in the United States mail at the courthouse

Page   1 of   2   DEPT. 56

```
MINUTES ENTERED
02/27/09
COUNTY CLERK
```

*47*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/27/09                                                          DEPT. 56

HONORABLE JANE L. JOHNSON        JUDGE | C. WRIGHT              DEPUTY CLERK
                                          S. WORKU, C.A.
HONORABLE                   JUDGE PRO TEM | .               ELECTRONIC RECORDING MONITOR

                            Deputy Sheriff | NONE              Reporter

| 2:00 pm | BC404958 | Plaintiff Counsel | |
| | | | NO APPEARANCES |
| | MARC HEADLEY | Defendant Counsel | |
| | VS | | |
| | CHURCH OF SCIENTOLOGY INTERNATIONAL | | |

NATURE OF PROCEEDINGS:

in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: February 27, 2009

John A. Clarke, Executive Officer/Clerk

By: *C. Wright*
    ────────────────────────
    C. Wright, Deputy


Barry Van Sickle
1079 Sunrise Avenue, Suite B-315
Roseville, CA  95661

Page   2 of   2   DEPT. 56

MINUTES ENTERED
02/27/09
COUNTY CLERK

48

**EXHIBIT E**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Barry Van Sickle—#98645<br>1079 Sunrise Avenue, Suite B-315<br>Roseville, CA 95661<br>TELEPHONE NO: 916 / 549-8784    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional): bvansickle@surewest.net<br>ATTORNEY FOR (Name): Plaintiff Marc Headley | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>MAR 0 6 2009<br><br>JOHN A. CLARKE, CLERK<br><br>BY AMBER LA FLEUR-CLAYTON, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS:
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

| PLAINTIFF/PETITIONER: Marc Headley | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Church of Scientology International, et. al. | BC 404958 |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint *First Amended*
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):*
      Notice of Related Case,
3. a. Party served *(specify name of party as shown on documents served):*

   Church of Scientology International,

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Elliot J. Abelson, General Counsel, Church of Scientology International
4. Address where the party was served: Mr. Abelson's law office address as listed with the state bar:
   8491 West Sunset Blvd. Suite 1100, Los Angeles, CA 90019
5. I served the party (check proper box)
   a. ☐ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date):          (2) at (time):
   b. ☑ by substituted service. On (date): 3 /4/ 09      at (time): 3:30 pm   I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3): Paul, person in charge of office

      (1) ☑ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☑ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 3/6/09   from *(city):* Los Angeles   or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10

www.accesslaw.com

*49*

(

| PLAINTIFF/PETITIONER: Marc Headley | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Church of Scientology International, et. al. | BC 404958 |

5. c. [ ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*           (2) from *(city):*

    (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. [ ] **by other means** *(specify means of service and authorizing code section):*

    [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. [ ] as an individual defendant.

  b. [ ] as the person sued under the fictitious name of *(specify):*

  c. [ ] as occupant.

  d. [✓] On behalf of *(specify):*

    under the following Code of Civil Procedure section:

    [✓] 416.10 (corporation)        [ ] 415.95 (business organization, form unknown)

    [ ] 416.20 (defunct corporation)    [ ] 416.60 (minor)

    [ ] 416.30 (joint stock company/association)    [ ] 416.70 (ward or conservatee)

    [ ] 416.40 (association or partnership)    [ ] 416.90 (authorized person)

    [ ] 416.50 (public entity)         [ ] 415.46 (occupant)

                          [ ] other:

7. **Person who served papers**

  a. Name: Barry Van Sickle—#98645

  b. Address: 1079 Sunrise Avenue, Suite B-315

  c. Telephone number: 916 / 549-8784

  d. The fee for service was: $ none

  e. I am:

    (1) [✓] not a registered California process server.

    (2) [ ] exempt from registration under Business and Professions Code section 22350(b).

    (3) [ ] a registered California process server:

      (i) [ ] owner [ ] employee [ ] independent contractor.

      (ii) Registration No.:

      (iii) County:

8. [✓] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. [ ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: March 6, 2009

| Barry Van Sickle | *(signature)* |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | |

POS-010 [Rev. January 1, 2007]      **PROOF OF SERVICE OF SUMMONS**      Page 2 of 2

*50*

**EXHIBIT F**

1   Anthony J. Oncidi, State Bar No. 118135
    Harold M. Brody, State Bar No. 84927
2   PROSKAUER ROSE LLP
    2049 Century Park East, Suite 3200
3   Los Angeles, California 90067-3206
    Telephone:  (310) 557-2900
4   Facsimile:  (310) 557-2193

5   Kendrick L. Moxon, State Bar No. 128240
    MOXON & KOBRIN
6   3055 Wilshire Boulevard, Suite 900
    Los Angeles, California 90010
7   Telephone:     (213) 487-4468
    Facsimile:     (213) 487-5385

8
    Attorneys for Defendant
9   CHURCH OF SCIENTOLOGY
    INTERNATIONAL
10

**CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court**

**APR 15 2009**

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A. El LaFLEUR-CLAYTON

11
                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12
                 **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**
13

14   MARC HEADLEY,                          Case No.  BC 404 958

15                 Plaintiff,               Assigned for All Purposes to the
                                            Honorable Jane L. Johnson
16

17              vs.                         **NOTICE OF DEMURRER AND
                                            DEMURRER OF DEFENDANT CHURCH
18                                          OF SCIENTOLOGY INTERNATIONAL TO
                                            PLAINTIFF'S FIRST AMENDED
19   CHURCH OF SCIENTOLOGY                  COMPLAINT [C.C.P. §430.10(e), (f)]
     INTERNATIONAL, a corporate entity;
20   and DOES 1 through 20,                 (Served concurrently with Motion to Strike)

21

22                 Defendants.             Date:  May 21, 2009
                                           Time:  8:30 a.m.
23                                         Dept.:  56

24   TO PLAINTIFF MARC HEADLEY AND TO HIS COUNSEL OF RECORD, BARRY

25   VAN SICKLE:

26        PLEASE TAKE NOTICE that on Thursday, May 21, 2009, at 8:30 a.m., or as soon

27   thereafter as this matter may be heard in Department 56 of the above-entitled Court, the

28

                                      1
                 **NOTICE OF DEMURRER AND DEMURRER**

1   Honorable Jane L. Johnson, Superior Court Judge, presiding, located at 111 North Hill Street,

2   Los Angeles, California 90012, defendant Church of Scientology International ("CSI") will

3   bring on for hearing the following Demurrer to plaintiff Marc Headley's First Amended

4   Complaint ("FAC"):

### DEMURRER

6   1. CSI demurs generally to the FAC's First Cause of Action, purportedly for

7   "Violation of B&P Code § 17200 et. seq [*sic*]," on the grounds that:

8   (a) the First Cause of Action, as pled, does not state facts sufficient to constitute

9   a cause of action, C.C.P. § 430.10(e), in that: (i) it purports to assert a claim in a

10   representative capacity that does not exist as a matter of law under B&PC §§ 17200 *et*

11   *seq.*; (ii) it fails to state facts necessary and essential to establish the only legally

12   cognizable representative status under B&PC §§ 17200 *et seq.*; and (iii) plaintiff

13   disclaims the only legally cognizable representative status that exists under B&PC §§

14   17200 *et seq.*; and

15   (b) the First Cause of Action, as pled, does not state facts sufficient to constitute

16   an individual cause of action, C.C.P. § 430.10(e), under B&PC §§ 17200 *et seq.*

17   2. CSI demurs specially to the First Cause of Action, as pled, as it is uncertain,

18   ambiguous, and unintelligible, C.C.P. § 430.10(f), in that it fails to specify the statutory

19   predicates upon which such a claim must be premised.

20   3. CSI demurs specially to the First Cause of Action, as pled, as it violates the

21   pleading rule that forbids combining separate causes of action as a purported single claim, and

22   thereby subjects itself to a special demurrer, C.C.P. § 430.60.

23   4. CSI demurs generally to the FAC's Second Cause of Action, purportedly for "Labor

24   Code Violations," on the grounds that:

25   (a) the Second Cause of Action, as pled, does not state facts sufficient to

26   constitute a cause of action, C.C.P. §430.10(e), in that it is time-barred on its face

27   pursuant to C.C.P. §338(a); and

28

2

NOTICE OF DEMURRER AND DEMURRER

52

1    (b) the Second Cause of Action, as pled, does not state facts sufficient to

2    constitute a cause of action, C.C.P. §430.10(e).

3    5.   CSI demurs specially to the Second Cause of Action, as pled, as it violates the

4    pleading rule that forbids combining separate causes of action as a purported single claim, and

5    thereby subjects itself to a special demurrer, C.C.P. § 430.60.

6    6.   CSI demurs specially to the Second Cause of Action, as pled, as it is uncertain,

7    ambiguous, and unintelligible, C.C.P. §430.10(f), in that it fails to identify the statutes upon

8    which the claim purports to be premised.

9    7.   CSI demurs generally to the FAC's Third Cause of Action, purportedly for

10   "Reformation of Oral Employment Contract," on the ground that it does not state facts

11   sufficient to constitute a cause of action, C.C.P. §430.10(e), in that California law does not

12   recognize a cause of action for reformation of an oral contract.

13   8.   CSI demurs generally to the FAC's Fourth Cause of Action, purportedly for

14   "Human Trafficking," on the ground that it does not state facts sufficient to constitute a cause

15   of action, C.C.P. §430.10(e), in that no such cause of action existed in California law at the

16   time the events upon which the claim purports to be based allegedly occurred.

17   9.   CSI demurs generally to the FAC's Fifth Cause of Action, purportedly for

18   "Invasion of Privacy and Constitutional Rights," on the ground that it does not state facts

19   sufficient to constitute a cause of action, C.C.P. § 430.10(e), in that it is time-barred on its face

20   pursuant to C.C.P. § 335.1.

21   As relief, defendant CSI requests that:

22   (1)  This Demurrer to the First Cause of Action be sustained without leave to

23   amend generally, and specifically without leave to amend as to any representative

24   proceeding;

25   (2)  This Demurrer to the Second Cause of Action be sustained without leave to

26   amend;

27   (3)  This Demurrer to the Third Cause of Action be sustained without leave to

28

3

NOTICE OF DEMURRER AND DEMURRER

1  amend;

2          (4)  This Demurrer to the Fourth Cause of Action be sustained without leave to

3  amend;

4          (5)  This Demurrer to the Fifth Cause of Action be sustained without leave to

5  amend;

6          (6) The Court enter an order dismissing the action; and

7          (7) The Court grant such other and further relief that is just and proper under these

8  circumstances.

9      This Demurrer is based upon this Notice of Demurrer and Demurrer, the accompanying

10  Memorandum of Points and Authorities set forth below, all matters as to which the Court

11  properly may or must take judicial notice, the Court's file in this action, and upon such other

12  matters as may be properly received into evidence by the Court at the time of the hearing.

13  Dated:  April 15, 2009                          Respectfully Submitted

14                                                  MOXON & KOBRIN
                                                    Kendrick L. Moxon
15
                                                         – and –
16
                                                    PROSKAUER ROSE LLP
17                                                  Harold M. Brody

18                                                  By: _____
19                                                      Harold M. Brody

20                                                  Attorneys for Defendant
                                                    CHURCH OF SCIENTOLOGY
21                                                  INTERNATIONAL

22

23

24

25

26

27

28

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action.

On April 15, 2009, I served the foregoing document described as:

**NOTICE OF DEMURRER AND DEMURRER OF DEFENDANT CHURCH OF SCIENTOLOGY INTERNATIONAL TO PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. §430.10(e), (f)]**

By First Class Mail on interested parties in this action as follows:

Barry Van Sickle
Law Offices of Barry Van Sickle
1079 Sunrise Ave., Box B-315
Roseville, CA  95661

Executed on April 15, 2009, at Los Angeles, California

I declare in accordance with the laws of the State of California, under penalty of perjury, that the foregoing is true and correct.

_Rosalee Doherty_
Signature

5

NOTICE OF DEMURRER AND DEMURRER

55

1 | Anthony J. Oncidi, State Bar No. 118135
Harold M. Brody, State Bar No. 84927
PROSKAUER ROSE LLP
2 | 2049 Century Park East, Suite 3200
Los Angeles, California 90067-3206
3 | Telephone: (310) 557-2900
Facsimile: (310) 557-2193

4 | Kendrick L. Moxon, State Bar No. 128240
MOXON & KOBRIN
5 | 3055 Wilshire Boulevard, Suite 900
Los Angeles, California 90010
6 | Telephone: (213) 487-4468
Facsimile: (213) 487-5385
7

8 | Attorneys for Defendant
CHURCH OF SCIENTOLOGY
9 | INTERNATIONAL

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 15 2009

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
A.E. LaFLEUR-CLAYTON

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | COUNTY OF LOS ANGELES, CENTRAL DISTRICT

12

| | |
|---|---|
| 13  MARC HEADLEY, | Case No. BC 404 958 |
| 14              Plaintiff, | Assigned for All Purposes to the Honorable Jane L. Johnson |
| 15       vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER OF DEFENDANT CHURCH OF SCIENTOLOGY INTERNATIONAL TO PLAINTIFF'S FIRST AMENDED COMPLAINT** [C.C.P. §430.10(e), (f)] |
| 16 | |
| 17  CHURCH OF SCIENTOLOGY INTERNATIONAL, a corporate entity; and DOES 1 through 20, | |
| 18 | |
| 19 | (Served concurrently with Motion to Strike) |
| 20              Defendants. | Date:  May 21, 2009 Time:  8:30 a.m. Dept.: 56 |
| 21 | |
| 22 | Complaint Filed:  Jan. 5, 2009 Trial Date:  N/A |

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................... 2

II. THE FIRST AMENDED COMPLAINT ....................................................... 2

III. ARGUMENT ........................................................................................... 4

    A.  SCRUTINY BY DEMURRER ............................................................... 4

    B.      THE FIRST CAUSE OF ACTION, WHETHER AN INDIVIDUAL OR
REPRESENTATIVE CLAIM, FAILS AS A MATTER OF LAW ............................. 5

        1. Plaintiff Fails to Plead The Essential Elements To Proceed
In A Representative Capacity Under The UCL ....................................... 5

        2. The First Cause Of Action Does Not State An Individual
Claim For An Unlawful Act Or Practice Under The UCL ...................... 7

        3. The First Cause Of Action Improperly Joins Distinct
Claims ......................................................................................... 8

    C. THE SECOND CAUSE OF ACTION IS TIME-BARRED .................................. 9

    D. THE THIRD CAUSE OF ACTION IS NO CAUSE OF ACTION
AT ALL.................................................................................................. 10

    E. PLAINTIFF HAS NO CLAIM FOR HUMAN TRAFFICKING .......................... 11

    F. PLAINTIFF'S INVASION OF PRIVACY CLAIM IS TIME
BARRED ............................................................................................... 12

    G. DISMISSAL WITH PREJUDICE IS APPROPRIATE......................................... 12

IV. CONCLUSION.......................................................................................... 13

i

TABLE OF AUTHORITIES

CASES

*AIU Ins. Co. v. Gillespie*
(1990) 222 Cal.App.3d 1155 .................................................................................... 11, 12

*American Home Ins. Co. v. Travelers Indemnity Co.*
(1981) 122 Cal.App.3d 951 ......................................................................................... 10

*Association of Community Organizations for Reform*
*Now v. Department of Industrial Relations*
(1995) 41 Cal.App.4th 298 .......................................................................................... 13

*Aubry v. Tri-City Hospital Dist.*
(1992) 2 Cal.4th 962 ..................................................................................................... 12

*Bank of the West v. Superior Court*
(1992) 2 Cal.4th 1254 ..................................................................................................... 7

*In re BCBG Overtime Cases*
(2008) 163 Cal.App.4th 1293 ......................................................................................... 6

*Bernardo v. Planned Parenthood Federation of America*
(2004) 115 Cal.App.4th 322 ........................................................................................... 7

*Berryman v. Merit Property Management, Inc.*
(2007) 152 Cal.App.4th 1544 ......................................................................................... 8

*Blank v. Kirwan*
(1985) 39 Cal.3d 311 .................................................................................................. 4, 8

*Calder v. Bull* (1798) 3 U.S. 386 ................................................................................ 11

*Californians for Disability Rights v. Mervyn's, LLC*
(2006) 39 Cal.4th 223 ..................................................................................................... 5

*Cain v. State Farm Mutual Automobile Ins. Co.*
(1976) 62 Cal. App. 3d 310 .......................................................................................... 12

*Cantu v. Resolution Trust Corp.*
(1992) 4 Cal.App.4th 857 ............................................................................................. 12

*Darr v. Yellow Cab Co.*
(1967) 67 Cal.2d 695 ...................................................................................................... 6

*Division of Labor Law Enforcement v. Barnes*
(1962) 205 Cal.App.2d 337 ............................................................................................ 9

ii

58

*Farmers Ins. Exchange v. Superior Court*
  (1992) 2 Cal.4th 377 .................................................................... 7

*Fireside Bank v. Superior Court*
  (2007) 40 Cal.4th 1069 ............................................................ 5, 6

*Griffith v. Department of Public Works*
  (1956) 141 Cal.App.2d 376............................................................ 4

*Haddad v. McDowell*
  (1931) 213 Cal. 690, 692 .............................................................. 9

*Hirsch v. Bank of America, N.A.*
  (2003) 107 Cal.App.4th 708 ....................................................... 4, 8

*Lee v. Los Angeles County Metropolitan Transit Authority*
  (2003) 107 Cal.App.4th 848 ......................................................... 12

*Lemoge Elec. v. San Mateo County*
  (1956) 46 Cal.2d 659 ................................................................. 10

*Linder v. Thrifty Oil Co.*
  (2000) 23 Cal.4th 429 ............................................................... 5, 7

*McKenney v. Purepac Pharmaceutical Co.*
  (2004) 167 Cal.App.4th 72 ...................................................... 4, 5, 7

*Murphy v. Kenneth Cole Productions, Inc.*
  (2007) 40 Cal.4th 1094 ................................................................ 9

*Norgart v. Upjohn Co.*
  (1999) 21 Cal.4th 383 ................................................................ 10

*Ochs v. Pacificare of Calif.*
  (2004) 115 Cal.App.4th 78 .......................................................... 12

*Paulus v. Bob Lynch Ford, Inc.*
  (2006) 139 Cal.App.4th 659 .......................................................... 8

*People v. Duz-Mor Diagnostic Lab.*
  (1998) 68 Cal.App.4th 654 ........................................................... 7

*People v. Jenkins*
  (1995) 35 Cal.App.4th 669 .......................................................... 11

Regents of Univ. of Calif. v. Superior Court
  (1999) 20 Cal.4th 509 ............................................................... 10

iii

*Rose v. Medtronics, Inc.*
(1980) 107 Cal.App.3d 150.................................................................. 6

*Searle v. Wyndham Internat., Inc.*
(2002) 102 Cal.App.4th 1327 ............................................................ 8

*Shupe v. Nelson*
(1967) 254 Cal.App.2d 693................................................................ 10

*Traders Sports, Inc. v. City of San Leandro*
(2002) 93 Cal.App.4th 37 ........................................................ 5, 12, 13

*Walker v. Countrywide Home Loans, Inc.*
(2002) 98 Cal.App.4th 1158 ............................................................. 7

*Yolo County Dept. of Social Services v. Municipal Court*
(1980) 107 Cal.App.3d 842................................................................ 4, 5

## STATUTES

B&P Code17200 *et seq* ........................................................... passim

B&P Code17203 .................................................................... 5, 6

B&P Code17204 ..................................................................... 5

B&P Code 17500 ...................................................................... 8

Civil Code section 52.5................................................... 3, 11, 12

Code Civ. Proc., Section 4 ........................................................ 10

Code Civ. Proc., section 335.1 ............................................. 12, 13

Code Civ. Proc., section 338, subd. (a).................................... 9, 10

Code Civ. Proc., section 339 ..................................................... 10

Code Civ. Proc., section 340 ..................................................... 12

Code Civ. Proc., section 382 ....................................................... 5

Code Civ. Proc., section 430.10, subd. (e)................................... 6

Code Civ. Proc., section 430.10, subd. (f) .................................. 9

Evid. Code, section 452, subd. (d)(1)......................................... 7

Labor Code 98.6....................................................................... 8

Labor Code 206......................................................................... 8

iv

60

Labor Code 1102.5 ............................................................................................ 8

Labor Code 1194 ............................................................................................. 8

Penal Code section 236.1 ........................................................................ 3, 11, 12

OTHER

Cal. Const., Art. I, § 1 .................................................................................. 12

Cal. Const., Art. I, § 9 .................................................................................. 12

Cal. Rules of Court, rules 3.761(a), (b).......................................................... 6

Cal. Rules of Court, 3.400(c)(6) ................................................................... 6

Federal (U.S. CONST., Art. I, §§ 9, 10).......................................................... 12

2005 Cal. Legis. Serv. ch. 240 (A.B. 22) (West) ............................................. 11

v

61

# I. PRELIMINARY STATEMENT

Plaintiff Marc Headley's First Amended Complaint ("FAC"), which is replete with inflammatory rhetoric and legal argument, but fatally deficient in alleging essential, material facts, cannot survive this Demurrer of defendant Church of Scientology International ("CSI"). Whether viewed as a pleading, a brief (with arguments and case citations, as in much of the paper) or a diatribe (*see* CSI's accompanying Motion to Strike), plaintiff's hyperbole, contentions of law, and conclusions of fact and law state no legally cognizable cause of action.

Although there are numerous pleading defects, plaintiff's first cause of action cannot stand, because under sections 17200 *et seq.* of the Business and Professions Code, it is styled as a representative claim, that California law does not recognize, and fails to allege facts to state any claim at all. His second cause of action, for purported violations of unspecified Labor Code sections, while deficient to state any claim, nonetheless reveals itself to be time-barred on its face no matter what the claim. His third cause of action, for reformation of an oral agreement, attempts to plead a cause of action that does not even exist in California law. His fourth claim, for alleged "human trafficking" under Penal Code section 236.1 and Civil Code section 52.5, is based on statutes enacted into law *after* the purported facts set forth in the FAC allegedly occurred, and therefore is barred by the constitutional prohibition on *ex post facto* enforcement. His fifth cause of action, for invasion of privacy, is time-barred on its face.

Accordingly, this Demurrer should be sustained, and plaintiff's action should be dismissed without leave to replead, all as a matter of law.

# II. THE FIRST AMENDED COMPLAINT

While CSI understands that, on demurrer, the truth of the FAC's material allegations are assumed *arguendo* to be true, if it becomes necessary to do so, CSI will prove that Scientology is a worldwide religious movement of millions of members. Its more than 7,000 Scientology churches, missions, and groups support humanitarian programs that reach millions of people every year. CSI, a tax-exempt charitable and religious corporation, is Scientology's Mother Church, overseeing Scientology's ministering of religious services, the propagation and defense of the faith, the production and dissemination of religious materials, international religious

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

1  convocation, missionary activities, coordination of community outreach and social betterment

2  activities, and ecclesiastical management.

3       If necessary, CSI will prove further that its Golden Era Productions division, where

4  plaintiff worked, is the central dissemination organization for the Scientology religion and

5  produces all the religious educational films, recordings and promotional materials for all

6  Scientology churches around the world.  CSI's staff is composed entirely of religious volunteers

7  who have dedicated their lives to serve the religion, a commitment plaintiff repeatedly re-

8  affirmed in written covenants before he departed in 2005.

9       Enmeshed within the FAC's speculative and conclusory assertions, argumentation and

10  slanders, the sparse material factual foundation upon which plaintiff premises his purported

11  causes of action is as follows.[1]

12       Plaintiff, who fashions himself a champion of others (though he speaks for no one but

13  himself), characterizes this action as one that will "clear[] the path" for others to "obtain the

14  compensation due them" by "forcing" CSI and other unidentified entities into compliance with

15  unspecified state and federal labor laws. (¶3.)  Plaintiff asserts generally that he worked below

16  minimum wage compensation at CSI from 1989 to 2005, (¶¶5-12), on "films and promotional

17  materials" for the Church, (¶16) and makes all manner of other irrelevant, but inflammatory

18  allegations regarding his alleged working conditions.

19       Plaintiff's First Cause of Action for "Violation of B&P Code §17200 et. seq [*sic*],"

20  asserts that CSI violated section 17200 by violations of unidentified "state and Federal labor

21  laws." (¶26.)  He then alleges – without any foundational allegations – that he has standing to

22  sue "for himself and as a representative of persons also entitled to restitution of unpaid wages,

23  overtime and waiting penalties." (¶27.)  He then refers to the availability of injunctive relief

24  without asking for it (¶28), and seeks attorney's fees. (¶29.)

25

26      ————————————

27  [1]  The irrelevant, improper, and generally hysterical material that is housed in this Complaint is
the subject of CSI's contemporaneously filed Motion to Strike.  This section of the

28  Memorandum focuses on the factual allegations that form the ostensible foundation for his
purported causes of action.

3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER**

1    For his purported Second Cause of Action – either for unpaid wages and penalties (15:1)

2    or Labor Code violations (1:14) – plaintiff claims that he is owed wages, overtime, and waiting

3    penalties, and should also collect attorney's fees "pursuant to the Labor Code." (¶¶31-33.)

4    For his purported Third Cause of Action – for reformation of oral employment contract –

5    plaintiff alleges that he unknowingly entered into an employment agreement with CSI, that he

6    did so under unidentified mistakes of law and fact, as well as unspecified misrepresentations and

7    demands by CSI, of which plaintiff says he only recently learned, thereby leading him to ask

8    that the "oral agreement" be reformed to comport to unspecified labor laws. (¶¶35-37.) He then

9    prays, incongruously, for damages under this equitable reformation theory. (¶37.)

10    In his purported Fourth Cause of Action, plaintiff, a former religious worker, seeks to

11    assert a claim for "human trafficking," by alleging that CSI, for a period of 19 years (¶44),

12    somehow allegedly restricted his access to the outside world. (¶43.)

13    Plaintiff's purported Fifth Cause of Action, for "invasion of privacy and constitutional

14    rights," incorporates all other allegations of the FAC and alleges that "Defendant CSI

15    wrongfully invaded Plaintiff's inalienable and Constitutional right to privacy under Article 1,

16    Section 1 of the California Constitution and common law." (¶51.)

17                                **III. ARGUMENT**

18    **A. SCRUTINY BY DEMURRER**

19    "[T]he main issue, or rather, the only issue involved in a demurrer hearing [is] whether

20    the complaint, as it stands, unconnected with extraneous matters, states a cause of action."

21    *McKenney v. Purepac Pharmaceutical Co.* (2004) 167 Cal.App.4th 72, 77, quoting *Griffith v.*

22    *Department of Public Works* (1956) 141 Cal.App.2d 376, 381. Thus, a demurrer "tests the legal

23    sufficiency of the complaint," *Hirsch v. Bank of America, N.A.* (2003) 107 Cal.App.4th 708,

24    716), assuming the truth of "all material facts properly pleaded," while disregarding all

25    "contentions, deductions or conclusions of fact or law." *Id., Blank v. Kirwan* (1985) 39 Cal.3d

26    311, 318.

27    A demurrer is well-taken when, on its face, the complaint "shows that the action may not

28    be pursued." *Yolo County Dept. of Social Services v. Municipal Court* (1980) 107 Cal.App.3d

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

1  842, 846-847. Thus, "[t]he absence of any allegation essential to a cause of action renders it

2  vulnerable to a general demurrer." *McKenney*, 167 Cal.App.4th at p. 77, quoting *Linder v.*

3  *Thrifty Oil Co.* (2000) 23 Cal.4th 429, 437, fn. 4. Similarly, if it is apparent from the face of the

4  complaint that no liability can exist as a matter of law, then a judgment sustaining a demurrer is

5  proper. *Traders Sports, Inc. v. City of San Leandro* (2002) 93 Cal.App.4th 37, 43. Also, if the

6  complaint plainly includes allegations that disclose an affirmative defense or other bar to

7  recovery, a demurrer based on that defense or bar will be sustained. *McKenney*, 167

8  Cal.App.4th at pp. 78-79.

9      Plaintiff's FAC fails all of the foregoing tests.

10
11  **B.   THE FIRST CAUSE OF ACTION, WHETHER AN INDIVIDUAL OR REPRESENTATIVE CLAIM, FAILS AS A MATTER OF LAW**

12      Plaintiff's First Cause of Action, premised upon sections 17200 *et seq.* of the Business &

13  Professions Code, the so-called Unfair Competition Law ("UCL"), is replete with pleading

14  deficiencies that foreclose it from surviving this Demurrer whether plaintiff is postured as an

15  individual or representative plaintiff.

16
17      **1.   Plaintiff Fails To Plead The Essential Elements To Proceed In A Representative Capacity Under The UCL.**

18      In his First Cause of Action, plaintiff purports to assert a claim in a representative capacity

19  under section 17200 of the UCL [¶ 27], despite the fact that, since the passage of Proposition 64

20  in November of 2004, there is no such thing as a "representative" or "private attorney general"

21  action under the UCL. Since then, "any person may pursue representative claims or relief on

22  behalf of others *only if the claimant* meets the standing requirements of section 17204 and

23  *complies with section 382 of the Code of Civil Procedure....*" Bus. & Prof. Code, § 17203,

24  emphasis supplied; *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1092 [all

25  representative actions under the UCL must satisfy the class action requirements of Code Civ.

26  Proc., § 382]; *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228-

27  229 [same]; STERN, BUSINESS & PROFESSIONS CODE §17200 PRACTICE (The Rutter Group 2008)

28

5

1    ¶7:40 [under the UCL, "a class action is the exclusive means for obtaining monetary relief on

2    behalf of others"].

3          To survive a demurrer, a putative UCL class representative plaintiff must plead facts

4    satisfying the traditional class action requirements. *Darr v. Yellow Cab Co.* (1967) 67 Cal.2d

5    695, 704 [a class action must be pled as such and must survive demurrer]. In other words, a

6    putative UCL class action plaintiff must plead *facts* to establish (1) a sufficiently numerous,

7    ascertainable class, (2) a well-defined community of interest, and (3) that class certification will

8    provide substantial benefits to litigants and the courts – *i.e.*, superiority to other methods.

9    Moreover, the "community of interest requirement embodies three factors: (1) predominant

10   common questions of law or fact; (2) class representatives with claims or defenses typical of the

11   class; and (3) class representatives who can adequately represent the class." *Fireside Bank*, 40

12   Cal.4th at p. 1089.

13         Additionally, a class action complaint must include the words "CLASS ACTION" in

14   capital letters in the caption and must, under "a separate heading entitled 'CLASS ACTION

15   ALLEGATIONS,'" plead "how the requirements of class action certification are met." Cal.

16   Rules of Court, rules 3.761(a), (b).

17         Plaintiff's FAC satisfies none of the foregoing essential and mandatory elements. "[I]f the

18   defects in the class action allegations appear on the face of the complaint or by matters subject

19   to judicial notice, the putative class action may be defeated by a demurrer or motion to strike."

20   *In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1298-1299; *Rose v. Medtronics, Inc.*

21   (1980) 107 Cal.App.3d 150, 154.

22         Thus, the First Cause of Action, brought by plaintiff as a representative claim, fails as a

23   legal impossibility (Bus. & Prof. Code, § 17203), and, as a putative class action, fails to plead

24   facts sufficient to state a cause of action. Code Civ. Proc., § 430.10, subd. (e).

25         Moreover, a class action is provisionally deemed to be a complex case under Rule

26   3.400(c)(6) of the California Rules of Court. In that regard, plaintiff's Judicial Council Civil

27   Cover Sheet, signed by plaintiff's counsel and filed herein, specifically disclaims both complex

28   case status and that this case is a class action. A true and correct copy of that Civil Cover Sheet,

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

1  of which the Court may take judicial notice, is annexed as an attachment to this Memorandum.

2  Evid. Code, § 452, subd. (d)(1).[2]  Such a disclaimer should lead to a dismissal of any

3  representative claim, class action or otherwise, with prejudice.

4  **2. The First Cause Of Action Does Not State An Individual Claim For**

5  **An Unlawful Act Or Practice Under The UCL.**

6  To the extent plaintiff attempts to state a personal claim for unlawful business acts or

7  practices under section 17200, he fails as well as a matter of law.  A business act or practice is

8  "unlawful" under the UCL if, and only if, it is forbidden by law.  *Farmers Ins. Exchange v.*

9  *Superior Court* (1992) 2 Cal.4th 377, 383; *Bank of the West v. Superior Court* (1992) 2 Cal.4th

10  1254, 1266; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169 ["The

11  [UCL] thus creates an independent action when a business practice violates some other law"].

12  In other words, the violation of a predicate law is an essential element of a claim for unlawful

13  business practices under section 17200, since "the [UCL] requires a violation of law." *People v.*

14  *Duz-Mor Diagnostic Lab.* (1998) 68 Cal.App.4th 654, 673.

15  Thus, where, as here, there is a failure to state foundational facts to establish a purported

16  violation of an underlying law or statute or a failure to identify the predicate law or laws upon

17  which a UCL unlawful practices claim purports to be premised, the deficient cause of action is

18  susceptible to a general demurrer for failure to state a claim.  *McKenney, supra,* 167

19  Cal.App.4th at p. 77 ["[t]he absence of any allegation essential to a cause of action renders it

20  vulnerable to a general demurrer", quoting *Linder, supra,* 23 Cal.4th at p. 437, fn. 4].

21  Accordingly:

22  [A]s the court properly found, [plaintiff] "failed to state which
    statute, regulation or law (whether federal, state or common law)
23  [defendant] allegedly violated." On appeal, [plaintiff] again fails
    to identify any statutory, regulatory or decisional law that
24  [defendant] allegedly violated.  We thus conclude that [plaintiff]
    failed to meet her burden of stating and substantiating a legally
25  sufficient claim of unlawfulness.

26  *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 325; *see*

27

28  [2]  Under the Code, "[j]udicial notice may be taken of ...(d) [r]ecords of (1) any court of this
    state...." Evid. Code, § 452, subd. (d)(1).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER**

1   *Searle v. Wyndham Internat., Inc.* (2002) 102 Cal.App.4th 1327, 1333-1334 ["complaint cannot

2   be maintained on the basis [that defendant] has engaged in an 'unlawful' business practice"

3   when plaintiff "has not cited any law which [defendant's] practice violates"].

4        Moreover, the only "other" or predicate laws that plaintiff even mentions in his FAC are

5   in his *ipse dixit* of CSI "[r]etaliation against Plaintiff's family business and others for pursuing

6   labor claims, which is a violation of Labor Code 1102.5 and 98.6" (¶24(a)), some conclusory

7   assertions attached to a statutory citation (but *not* alleged to be related to plaintiff) (¶¶24(a), (d),

8   (f)), and in his legal arguments concerning waivers and releases, where he refers to Labor Code

9   sections 1194 and 206.5 (¶21.) Those statutory citations are mere legal conclusions, and they

10  do not salvage the First Cause of Action.  In demurrer practice, the Court disregards

11  "contentions, deductions or conclusions of fact or law."  *Hirsch, supra*, 107 Cal.App.4th at p.

12  716; *Blank, supra*, 39 Cal.3d at p. 318.  A cause of action under section 17200 is vulnerable to

13  demurrer if it does not plead *facts* sufficient to satisfy the applicable pleading requirements.

14  *Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1554.  Since the

15  FAC alleges no foundational facts regarding any alleged "retaliation," "waiver," or "releases" as

16  to plaintiff, mere conclusory references to statutes fail to state facts sufficient to constitute a

17  cause of action on his behalf or at all.

18        Since plaintiff has failed to plead the facts that are an essential element of his purported

19  cause of action – *i.e.*, that CSI allegedly violated some other law or laws – he has failed to state

20  a cognizable UCL claim as a matter of law.

21        **3.  The First Cause Of Action Improperly Joins Distinct Claims.**

22        Section 17200 is written in the disjunctive.[3]  It creates three separate varieties of unfair

23  competition, and thus, three different causes of action – (i) unlawful acts or practices, (ii) unfair

24  acts or practices, and (iii) fraudulent acts or practices – each with a unique set of essential

25  elements.  *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 678.

26  ─────────────

    [3]  Section 17200 of the Business and Professions Code states, with emphasis supplied: "As used

27  in this chapter, unfair competition shall mean and include any unlawful, unfair *or* fraudulent
    business act or practice and unfair, deceptive, untrue or misleading advertising and any act

28  prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the
    Business and Professions Code."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

1    Because each is a separate tort, each of section 17200's causes of action must be

2    separately stated. "It is familiar law that a complaint or cross-complaint in which two or more

3    purported causes of action are not separately stated is vulnerable and subject to a special

4    demurrer." *Division of Labor Law Enforcement v. Barnes* (1962) 205 Cal.App.2d 337, 345;

5    *Campbell v. Rayburn* (1954) 129 Cal.App.2d 232, 235 [special demurrer properly sustained

6    "because the complaint was defective in that two purported causes of action were not separately

7    stated"]; *Haddad v. McDowell* (1931) 213 Cal. 690, 692.

8        Ignoring this well-settled rule, plaintiff conflates a purported unlawful acts claim with a

9    purported unfair acts claim in his First Cause of Action. (¶26 ["Defendant CSI and Doe

10   Defendants have engaged in illegal and unfair business practices in violation of B&P Code

11   §17200...."].) As shown above, this alone is a sufficient ground upon which to sustain a special

12   demurrer to the First Cause of Action, but plaintiff's single reference to "unfair" acts or

13   practices also renders the First Cause of Action uncertain, ambiguous, and unintelligible. Code

14   Civ. Proc., §430.10, subd. (f).

15       C.    THE SECOND CAUSE OF ACTION IS TIME-BARRED

16       Plaintiff's Second Cause of Action seeks to recover "unpaid and withheld legal wages

17   including minimum wages unpaid, overtime wages and waiting penalties all authorized by the

18   California Labor Code...." (¶32.) While plaintiff makes no effort at all to plead which

19   particular statutory provisions within the Labor Code were violated, that demurrable offense –

20   failure to plead an essential element of the claim – is the least of the flaws in this purported

21   cause of action. *Any* claim that plaintiff seeks to pursue against CSI under the California Labor

22   Code is time-barred on the face of the Complaint and, thus, fatally defective as a matter of law.

23       "An action upon a liability created by statute" is subject to a three-year statute of

24   limitations. Code Civ. Proc., § 338, subd. (a); *see, e.g., Murphy v. Kenneth Cole Productions,*

25   *Inc.* (2007) 40 Cal.4th 1094, 1112 [complaint seeking recovery of the unpaid balance of

26   minimum wage and overtime wages under the Labor Code subject to a three-year statute of

27   limitations]. Plaintiff forever terminated his relationship with CSI in January 2005. (¶15.) He

28   filed this action on January 5, 2009, *four* years later.

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

1    The purpose of a statute of limitations is "to protect defendants from the stale claims of

2    dilatory plaintiffs." *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395; *Regents of Univ. of*

3    *Calif. v. Superior Court* (1999) 20 Cal.4th 509, 532. It is *not* a disfavored defense, as plaintiffs

4    who have pled themselves out of a cause of action are wont to claim. Rather, it occupies an

5    equal footing of favor with the resolution of claims on their merits, as both support important

6    public policy considerations. *Norgart*, 21 Cal.4th at p. 395. Moreover, since statutes of

7    limitation are codified in the Code of Civil Procedure, they are to be liberally construed "to

8    effect [the Code's] objects and to promote justice." Code Civ. Proc., § 4.

9        Thus, on the face of the FAC, the Second Cause of Action for unspecified Labor Code

10   claims is time-barred as a matter of law. Code Civ. Proc., § 338, subd. (a). Plaintiff is a year

11   too late, and the demurrer should be sustained without leave to amend.

12       **D.    THE THIRD CAUSE OF ACTION IS NO CAUSE OF ACTION AT ALL**

13       Reformation is a statutory,[4] equitable remedy, whose function and purpose "is to correct

14   a *written instrument* in order to effectuate a common intention of both parties which was

15   incorrectly reduced to writing." *Lemoge Elec. v. San Mateo County* (1956) 46 Cal.2d 659, 663,

16   emphasis supplied; *see also American Home Ins. Co. v. Travelers Indemnity Co.* (1981) 122

17   Cal.App.3d 951, 963. Reformation, therefore, is *not* available for judicial modification of an

18   *oral agreement. See Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 699-700; *American Home*

19   *Ins. Co., supra.* Plaintiff's Third Cause of Action is for "Reformation of Oral Employment

20   Contract." (Complaint, 15:14-15.) There is no such cause of action under California law.

21       Moreover, even if there were such a thing as a cause of action for reformation of an oral

22   agreement, the statute of limitations for actions based upon an oral contract is two years. Code

23   Civ. Proc., § 339. Plaintiff, who has pled that he terminated any relationship with CSI

24   completely in January 2005, filed his Complaint four years later on January 5, 2009.

25       Thus, not only is any cause of action based on any alleged oral employment agreement

26

27   _____
     [4] "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the
     other at the time knew or suspected, *a written contract* does not truly express the intention of the

28   parties, it may be revised on the application of a party aggrieved, so as to express that
     intention...." Civ. Code, § 339, emphasis supplied.

1   time-barred, CSI's demurrer to plaintiff's Third Cause of Action should be sustained, without

2   leave to replead, since the cause of action plaintiff seeks to assert does not exist in the first

3   place.

4       **E.    PLAINTIFF HAS NO CLAIM FOR HUMAN TRAFFICKING**

5           Plaintiff's inclusion of a purported cause of action for "human trafficking," replete with

6   scurrilous and sensational allegations, can only have been raised now for the first time for

7   reasons other than the sincere pursuit of a viable claim.  It is plainly not available to this plaintiff

8   as a matter of law, even if there were actually a grain of truth in the outrageous and ridiculous

9   allegations plaintiff makes, which there is not.

10          Plaintiff seeks to exploit Civil Code section 52.5, which creates a private right of action

11  for "human trafficking."  That civil right of action is premised upon Penal Code section 236.1,

12  which states that "[a]ny person who deprives or violates the personal liberty of another with the

13  intent … to obtain forced labor or services, is guilty of human trafficking."  Pen. Code, § 236.1,

14  subd. (a).  "Forced labor or services" means "labor or services that are performed or provided by

15  a person and are obtained or maintained through force, fraud, or coercion, or equivalent conduct

16  that would reasonably overbear the will of the person."  Pen. Code, § 236.1, subd. (e).

17          Plaintiff's human trafficking claim is a sham from its inception, as is evident and

18  undeniable from the face of the FAC.  Plaintiff explicitly pleads that he was on CSI's staff

19  "from 1989 to January, 2005." (¶15.)  Accordingly, all the material facts alleged by plaintiff as

20  the factual foundation for this purported claim occurred *before* January 2005.  However, both

21  Civil Code section 52.5 and Penal Code section 236.1 derive from Assembly Bill 22, which did

22  not become law until September 21, 2005.  2005 Cal. Legis. Serv. ch. 240 (A.B. 22) (West).  In

23  other words, neither the penal statute nor the civil statute creating a private right of action for

24  violation of the criminal predicate was even in effect until nine months *after* plaintiff left CSI's

25  staff.

26          An *ex post facto* law is a criminal statute that would impose criminal liability

27  retrospectively for conduct that was not criminal when committed.  *Calder v. Bull* (1798) 3 U.S.

28  386-389, [copy attached]; *People v. Jenkins* (1995) 35 Cal.App.4th 669, 672; *AIU Ins. Co. v.*

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER**

1   *Gillespie* (1990) 222 Cal.App.3d 1155, 1164. *Ex post facto* laws are expressly forbidden by

2   both the Federal (U.S. CONST., Art. I, §§ 9, 10), and California Constitutions. CAL. CONST.,

3   Art. I, § 9. Thus, Penal Code section 236.1 cannot provide the predicate for plaintiff's Fourth

4   Cause of Action, since the conduct alleged predated the enactment of the criminal statute. Since

5   there is no possible violation of the criminal statute that plaintiff can plead, Civil Code section

6   52.5 cannot create the private right of action plaintiff seeks to pursue, because the underlying

7   conduct alleged was not and cannot be a violation of a nonexistent criminal statute.

8       Plaintiff's Fourth Cause of Action, therefore, is an irreparable legal nullity.

9   **F.   PLAINTIFF'S INVASION OF PRIVACY CLAIM IS TIME BARRED**

10      Plaintiff's final purported cause of action seeks to state a claim for invasion of privacy

11  under both the authority of Article I, Section 1 of the California Constitution and common law.

12  [¶51]. All the conduct alleged in the FAC that could possibly form the foundation for a privacy

13  claim occurred before plaintiff left CSI's staff in January 2005. The statute of limitations for

14  common law invasion of privacy claims and for privacy claims brought under Article I, Section

15  1 is now two years. Code Civ. Proc., § 335.1.[5]

16  **G.   DISMISSAL WITH PREJUDICE IS APPROPRIATE**

17      Leave to amend after a sustained demurrer need not be given where there is no

18  reasonable possibility that the pleading can be cured by amendment. *Lee v. Los Angeles County*

19  *Metropolitan Transit Authority* (2003) 107 Cal.App.4th 848, 854; *Aubry v. Tri-City Hospital*

20  *Dist.* (1992) 2 Cal.4th 962, 967. Nor can a plaintiff resuscitate a failed claim by disclaiming or

21  contradicting matters previously pled. *Ochs v. Pacificare of Calif.* (2004) 115 Cal.App.4th 782,

22  797; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.

23      Plaintiff bears the burden to demonstrate a reasonable possibility of cure by amendment,

24  *Traders Sports, Inc. v. City of San Leandro supra*, 93 Cal.App.4th at p. 43, by showing "in what

25  _____

26  [5] Originally, actions for invasion of privacy were subject to the one-year statute of limitations
    of Code Civ. Proc., § 340, subd. 3. *Cain v. State Farm Mutual Automobile Ins. Co.* (1976) 62

27  Cal. App. 3d 310, 313. However, that statute was revised and recodified in 2002, under Code
    Civ. Proc. § 335.1, which sets a two-year statute of limitations for "[a]n action for ... injury to

28  ... an individual caused by the wrongful act ... of another."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

1   manner he can amend his complaint and how that amendment will change the legal effect of his

2   pleading." *Association of Community Organizations for Reform Now v. Department of*

3   *Industrial Relations* (1995) 41 Cal.App.4th 298, 302. Where, as here, that burden is beyond the

4   plaintiff's grasp, sustaining the demurrer without leave to amend is proper. *Trader Sports*, 93

5   Cal.App.4th at p. 44.

6           Accordingly, plaintiff's Fourth Cause of Action for human trafficking and Third Cause

7   of Action for reformation of an oral agreement should be dismissed with prejudice, because it is

8   impossible to state any legally cognizable claim for a non-existent cause of action. Plaintiff's

9   Second Cause of Action for unspecified Labor Code violations is equally unsalvageable,

10  because all the provisions of the Labor Code are subject to the same three-year statute of

11  limitations, which expired in January of 2008. Similarly, plaintiff's Fifth Cause of Action for

12  invasion of privacy is subject to the two-year statute of limitations of C.C.P. § 335.1 and forever

13  barred. His First Cause of Action should be dismissed with prejudice as well as to any effort to

14  state a class action as both plaintiff and his counsel have conceded that it is not a class action.

15                              **IV. CONCLUSION**

16          For all the foregoing reasons, and for those presented in CSI's accompanying Motion to

17  Strike, this Demurrer should be sustained *in toto,* with prejudice, in recognition of the

18  unavoidable conclusion that nothing can be done to transform the screed that is the FAC into a

19  legally cognizable claims.

20  Dated:  April 15, 2009                     Respectfully Submitted,

21                                             MOXON & KOBRIN
                                               Kendrick L. Moxon

22
                                               – and –
23
                                               PROSKAUER ROSE LLP
24                                             Harold M. Brody

25                                             By:  _____
26                                                   Harold M. Brody

27                                             Attorneys for Defendant
                                               CHURCH OF SCIENTOLOGY
28                                             INTERNATIONAL

                                        13

73

Westlaw.

3 U.S. 386                                                                 Page 1
3 U.S. 386, 3 Dall. 386, 1798 WL 587 (U.S.Conn.), 1 L.Ed. 648
 (Cite as: 3 U.S. 386, 1798 WL 587 (U.S.Conn.))

▷

Supreme Court of the United States.
Calder et Wife,
v.
Bull et Wife.
August Term, 1798.

**1 In error from the State of Connecticut. The cause
was argued at the last term, (in the absence of THE
CHIEF JUSTICE) and now the court delivered their
opinions seriatim.

West Headnotes

Appeal and Error 30 ⬤➞1

30 Appeal and Error
    30I Nature and Form of Remedy
        30k1 k. Origin, Nature, and Scope of
Remedies in General. Most Cited Cases

Constitutional Law 92 ⬤➞2356

92 Constitutional Law
    92XX Separation of Powers
        92XX(B) Legislative Powers and Functions
            92XX(B)2 Encroachment on Judiciary
                92k2354 Establishment, Organization,
and Jurisdiction of Courts
                    92k2356 k. Appellate Courts. Most
Cited Cases
        (Formerly 92k55)

Constitutional Law 92 ⬤➞2366

92 Constitutional Law
    92XX Separation of Powers
        92XX(B) Legislative Powers and Functions
            92XX(B)2 Encroachment on Judiciary
                92k2366 k. New Trial. Most Cited
Cases
        (Formerly 92k55)

New Trial 275 ⬤➞0.5

275 New Trial

275I Nature and Scope of Remedy
    275k0.5 k. Nature and Scope of Remedy in
General. Most Cited Cases
    (Formerly 275k1/2)
Under the charter of Connecticut, the legislature were
not restrained from exercising judicial power, and
were accustomed to grant appeals and new trials.

Constitutional Law 92 ⬤➞660

92 Constitutional Law
    92V Construction and Operation of Constitutional
Provisions
        92V(F) Constitutionality of Statutory
Provisions
            92k660 k. Contravention of Natural Justice
or Common Right. Most Cited Cases
        (Formerly 92k39)
If congress or a state legislature pass a law, within the
general scope of their constitutional power, the courts
cannot pronounce it void merely because, in their
judgment, it is contrary to the principles of natural
justice.

Constitutional Law 92 ⬤➞2654

92 Constitutional Law
    92XXI Vested Rights
        92k2654 k. Appeal or Other Proceedings for
Review. Most Cited Cases
        (Formerly 92k111)

New Trial 275 ⬤➞0.5

275 New Trial
    275I Nature and Scope of Remedy
        275k0.5 k. Nature and Scope of Remedy in
General. Most Cited Cases
        (Formerly 275k1/2)
Act Conn. May, 1795, setting aside a decree of a
probate court disapproving a will and granting a new
hearing thereof in the probate court, with the right to
appeal, did not take away any vested rights from the
contestants, since the decree excluding the will from
probate did not have the effect to vest any property
rights in them; the property rights in the testator's
estate being created by a means independent of the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 U.S. 386
3 U.S. 386, 3 Dall. 386, 1798 WL 587 (U.S.Conn.), 1 L.Ed. 648
(Cite as: 3 U.S. 386, 1798 WL 587 (U.S.Conn.))

decree.

**278.3**

**361** Statutes
    **361VI** Construction and Operation
        **361VI(D)** Retroactivity
            **361k278.3** k. Power to Enact and Validity.
Most Cited Cases
    (Formerly 92k186)
In the absence of an express constitutional
prohibition, a statute is not void merely because it is
retrospective in its action.

**Constitutional Law 92 2790**

**92** Constitutional Law
    **92XXIII** Ex Post Facto Prohibitions
        **92XXIII(A)** Constitutional Prohibitions in
General
            **92k2790** k. Punishment in General. Most
Cited Cases
    (Formerly 92k197)

**Constitutional Law 92 2812**

**92** Constitutional Law
    **92XXIII** Ex Post Facto Prohibitions
        **92XXIII(B)** Particular Issues and
Applications
        **92k2809** Criminal Proceedings
            **92k2812** k. Evidence. Most Cited Cases
    (Formerly 92k197)
An ex post facto law is one which imposes a
punishment for an act which was not punishable
when it was committed, or imposes additional
punishment, or changes the rules of evidence, by
which less or different testimony is sufficient to
convict.

**Constitutional Law 92 2785**

**92** Constitutional Law
    **92XXIII** Ex Post Facto Prohibitions
        **92XXIII(A)** Constitutional Prohibitions in
General
            **92k2785** k. Relationship to Retroactive
Laws. Most Cited Cases
    (Formerly 92k197)

**278.2**

**361** Statutes
    **361VI** Construction and Operation
        **361VI(D)** Retroactivity
            **361k278.2** k. Nature and Scope. Most Cited
Cases
    (Formerly 92k197)
Every ex post facto law must necessarily be
retrospective, but every retrospective law is not an ex
post facto law.

**Constitutional Law 92 2789**

**92** Constitutional Law
    **92XXIII** Ex Post Facto Prohibitions
        **92XXIII(A)** Constitutional Prohibitions in
General
            **92k2789** k. Penal Laws in General. Most
Cited Cases
    (Formerly 92k199)
A prohibition in the constitution against the passage
of ex post facto laws applies exclusively to penal or
criminal cases.

**278.29**

**361** Statutes
    **361VI** Construction and Operation
        **361VI(D)** Retroactivity
            **361k278.24** Validity of Particular
Retroactive Statutes
            **361k278.29** k. Criminal Law. Most
Cited Cases
    (Formerly 92k203)
While the legislature may not affix to any crime a
greater penalty than was prescribed at the time of its
commission, yet it may lessen the punishment, or
remit it altogether, when no right conferred on
another department of the government by the
constitution is thereby infringed.

**Federal Courts 170B 386**

**170B** Federal Courts
    **170BVI** State Laws as Rules of Decision
        **170BVI(B)** Decisions of State Courts as
Authority
        **170Bk386** k. State Constitutions and
Statutes, Validity and Construction. Most Cited

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Cases
    (Formerly 106k366(1))
Where a question of constitutional law arises wholly under the state constitution, and has been decided by the supreme court of the state, such construction is conclusive on the United States courts.

**Federal Courts 170B ⟜504.1**

170B Federal Courts
    170BVII Supreme Court
        170BVII(E) Review of Decisions of State Courts
            170Bk504 Nature of Decisions or Questions Involved
                170Bk504.1 k. In General. Most Cited Cases
    (Formerly 106k394(4))
The supreme court of the United States has no authority, on a writ of error from a state court, to declare a state law void by reason of its collision with a state constitution.

*386 Chase, Justice.

**2 The decision of one question determines (in my opinion), the present dispute. I shall, therefore, state from the record no more of the case, than I think necessary for the consideration of that question only.

The Legislature of Connecticut, on the 2nd Thursday of May 1795, passed a resolution or law, which, for the reasons assigned, set aside a decree of the court of Probate for Harford, on the 21st of March 1793, which decree disapproved of the will of Normand Morrison (the grandson) made the 21st of August 1779, and refused to record the said will; and granted a new hearing by the said Court of Probate, with liberty of appeal therefrom, in six months. A new hearing was had, in virtue of this resolution, or law, before the said Court of Probate, who, on the 27th of July 1795, approved the said will, and ordered it to be recorded. At August 1795, appeal was then had to the superior court at Harford, who at February term 1796, affirmed the decree of the Court of Probate. Appeal was had to the Supreme Court of errors of Connecticut, who, in June 1796, adjudged, that there were no errors. More than 18 months elapsed from the decree of the Court of Probate (on the 1st of March 1793) and thereby Caleb Bull and wife were barred of all right *387 of appeal, by a statute of

Connecticut. There was no law of that State whereby a new hearing, or trial, before the said Court of Probate might be obtained. Calder and wife claim the premises in question, in right of his wife, as heiress of N. Morrison, physician; Bull and wife claim under the will of N. Morrison, the grandson.

The Council for the Plaintiffs in error, contend, that the said resolution or law of the Legislature of Connecticut, granting a new hearing, in the above case, is an ex post facto law, prohibited by the Constitution of the United States; that any law of the Federal government, or of any of the State governments, contrary to the Constitution of the United States, is void; and that this court possesses the power to declare such law void.

It appears to me a self-evident proposition, that the several State Legislatures retain all the powers of legislation, delegated to them by the State Constitutions; which are not EXPRESSLY taken away by the Constitution of the United States. The establishing courts of justice, the appointment of Judges, and the making regulations for the administration of justice, within each State, according to its laws, on all subjects not entrusted to the Federal Government, appears to me to be the peculiar and exclusive province, and duty of the State Legislatures: All the powers delegated by the people of the United States to the Federal Government are defined, and NO CONSTRUCTIVE powers can be exercised by it, and all the powers that remain in the State Governments are indefinite; except only in the Constitution of Massachusetts.

The effect of the resolution or law of Connecticut, above stated, is to revise a decision of one of its Inferior Courts, called the Court of Probate for Harford, and to direct a new hearing of the case by the same Court of Probate, that passed the decree against the will of Normand Morrison. By the existing law of Connecticut a right to recover certain property had vested in Calder and wife (the appellants) in consequence of a decision of a court of justice, but, in virtue of a subsequent resolution or law, and the new hearing thereof, and the decision in consequence, this right to recover certain property was divested, and the right to the property declared to be in Bull and wife, the appellees. The sole enquiry is, whether this resolution or law of Connecticut, having such operation, is an ex post facto law, within

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 U.S. 386
3 U.S. 386, 3 Dall. 386, 1798 WL 587 (U.S.Conn.), 1 L.Ed. 648
(Cite as: 3 U.S. 386, 1798 WL 587 (U.S.Conn.))

the prohibition of the Federal Constitution?

**3 Whether the Legislature of any of the States can revise and correct by law, a decision of any of its Courts of Justice, although not prohibited by the Constitution of the State, is a question of very great importance, and not necessary NOW to be determined; because the resolution or law in question does not go so far. I cannot subscribe to the omnipotence of a State *388 Legislature, or that it is absolute and without control; although its authority should not be expressly restrained by the Constitution, or fundamental law, of the State. The people of the United States erected their Constitutions, or forms of government, to establish justice, to promote the general welfare, to secure the blessings of liberty; and to protect their persons and property from violence. The purposes for which men enter into society will determine the nature and terms of the social compact; and as they are the foundation of the legislative power, they will decide what are the proper objects of it: The nature, and ends of legislative power will limit the exercise of it. This fundamental principle flows from the very nature of our free Republican governments, that no man should be compelled to do what the laws do not require; nor to refrain from acts which the laws permit. There are acts which the Federal, or State, Legislature cannot do, without exceeding their authority. There are certain vital principles in our free Republican governments, which will determine and over-rule an apparent and flagrant abuse of legislative power; as to authorize manifest injustice by positive law; or to take away that security for personal liberty, or private property, for the protection whereof of the government was established. An ACT of the Legislature (for I cannot call it a law) contrary to the great first principles of the social compact, cannot be considered a rightful exercise of legislative authority. The obligation of a law in governments established on express compact, and on republican principles, must be determined by the nature of the power, on which it is founded. A few instances will suffice to explain what I mean. A law that punished a citizen for an innocent action, or, in other words, for an act, which, when done, was in violation of no existing law; a law that destroys, or impairs, the lawful private contracts of citizens; a law that makes a man a Judge in his own cause; or a law that takes property from A. and gives it to B: It is against all reason and justice, for a people to entrust a Legislature with SUCH powers; and, therefore, it cannot be presumed that

they have done it. The genius, the nature, and the spirit, of our State Governments, amount to a prohibition of such acts of legislation; and the general principles of law and reason forbid them. The Legislature may enjoin, permit, forbid, and punish; they may declare new crimes; and establish rules of conduct for all its citizens in future cases; they may command what is right, and prohibit what is wrong; but they cannot change innocence into guilt; or punish innocence as a crime; or violate the right of an antecedent lawful private contract; or the right of private property. To maintain that our Federal, or State, Legislature possesses such powers, if they had not been expressly restrained; would, *389 in my opinion, be a political heresy, altogether inadmissible in our free republican governments.

**4 All the restrictions contained in the Constitution of the United States on the power of the State Legislatures, were provided in favour of the authority of the Federal Government. The prohibition against their making any ex post facto laws was introduced for greater caution, and very probably arose from the knowledge, that the Parliament of Great Britain claimed and exercised a power to pass such laws, under the denomination of bills of attainder, or bills of pains and penalties; the first inflicting capital, and the other less, punishment. These acts were legislative judgments; and an exercise of judicial power. Sometimes they respected the crime, by declaring acts to be treason, which were not treason, when committed,[FN6] at other times, they violated the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit;[FN7] at other times they inflicted punishments, where the party was not, by law, liable to any punishment; [FN8] and in other cases, they inflicted greater punishment, than the law annexed to the offence.[FN9]The ground for the exercise of such legislative power was this, that the safety of the kingdom depended on the death, or other punishment, of the offender: as if traitors, when discovered, could be so formidable, or the government so insecure! With very few exceptions, the advocates of such laws were stimulated by ambition, or personal resentment, and vindictive malice. To prevent such, and similar, acts of violence and injustice, I believe, the Federal and State Legislatures, were prohibited from passing any bill of attainder; or any ex post facto law.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

FNa The case of the Earl of Strafford, in 1641.

FNa The case of Sir John Fenwick, in 1696.

FNb The banishment of Lord Clarendon, 1669 (19 Car. II., c. 10), and of the Bishop of Atterbury, in 1723 (9 Geo. I., c. 17).

FNc The Coventry act, in 1670 (22 & 23 Car. II., c. 1).

The case of the Earl of Strafford, in 1641.

The case of Sir John Fenwick, in 1696.

The banishment of Lord Clarendon, 1669 (19 Car. 2. c. 10.) and of the Bishop of Atterbury, in 1723, (9 Geo. 1. c. 17.)

The Coventry act, in 1670, (22 & 23 Car. 2 c. 1.)

The Constitution of the United States, article 1, section 9, prohibits the Legislature of the United States from passing any ex post facto law; and, in section 10, lays several restrictions on the authority of the Legislatures of the several states; and, among them, 'that no state shall pass any ex post facto law.'

**5 It may be remembered, that the legislatures of several of the states, to wit, Massachusetts, Pennsylvania, Delaware, Maryland, and North and South Carolina, are expressly prohibited, by their state Constitutions, from passing any ex post facto law.

*390 I shall endeavour to show what law is to be considered an ex post facto law, within the words and meaning of the prohibition in the Federal Constitution. The prohibition, 'that no state shall pass any ex post facto law, ' necessarily requires some explanation; for, naked and without explanation, it is unintelligible, and means nothing. Literally, it is only, that a law shall not be passed concerning, and after the fact, or thing done, or action committed. I would ask, what fact; of what nature, or kind; and by whom done? That Charles 1st. king of England, was beheaded; that Oliver Cromwell was Protector of England; that Louis 16th, late King of France, was

guillotined; are all facts, that have happened; but it would be nonsense to suppose, that the States were prohibited from making any law after either of these events, and with reference thereto. The prohibition, in the letter, is not to pass any law concerning, and after the fact; but the plain and obvious meaning and intention of the prohibition is this; that the Legislatures of the several states, shall not pass laws, after a fact done by a subject, or citizen, which shall have relation to such fact, and shall punish him for having done it. The prohibition considered in this light, is an additional bulwark in favour of the personal security of the subject, to protect his person from punishment by legislative acts, having a retrospective operation. I do not think it was inserted to secure the citizen in his private rights, of either property, or contracts. The prohibitions not to make any thing but gold and silver coin a tender in payment of debts, and not to pass any law impairing the obligation of contracts, were inserted to secure private rights; but the restriction not to pass any ex post facto law, was to secure the person of the subject from injury, or punishment, in consequence of such law. If the prohibition against making ex post facto laws was intended to secure personal rights from being affected, or injured, by such laws, and the prohibition is sufficiently extensive for that object, the other restraints, I have enumerated, were unnecessary, and therefore improper; for both of them are retrospective.

I will state what laws I consider ex post facto laws, within the words and the intent of the prohibition. 1st. Every law that makes an action , done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. *391 All these, and similar laws, are manifestly unjust and oppressive. In my opinion, the true distinction is between ex post facto laws, and retrospective laws. Every ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto law: The former, only, are prohibited. Every law that takes away, or impairs, rights vested, agreeably to existing laws, is retrospective, and is generally unjust; and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

may be oppressive; and it is a good general rule, that a law should have no retrospect: but there are cases in which laws may be just, and for the benefit of the community, and also of individuals, relate to a time antecedent to their commencement; as statutes of oblivion, or of pardon. They are certainly retrospective, and literally both concerning, and after, the facts committed. But I do not consider any law ex post facto, within the prohibition, that mollifies the rigor of the criminal law; but only those that create, or aggravate, the crime; or encrease the punishment, or change the rules of evidence, for the purpose of conviction. Every law that is to have an operation before the making thereof, as to commence at an antecedent time; or to save time from the statute of limitations; or to excuse acts which were unlawful, and before committed, and the like; is retrospective. But such laws may be proper or necessary, as the case may be. There is a great and apparent difference between making an UNLAWFUL act LAWFUL; and the making an innocent action criminal, and punishing it as a CRIME. The expressions 'ex post facto laws,' are technical, they had been in use long before the Revolution, and had acquired an appropriate meaning, by Legislators, Lawyers, and Authors. The celebrated and judicious Sir William Blackstone, in his commentaries, considers an ex post facto law precisely in the same light I have done. His opinion is confirmed by his successor, Mr. Wooddeson; and by the author of the Federalist, who I esteem superior to both, for his extensive and accurate knowledge of the true principles of Government.

**6 I also rely greatly on the definition, or explanation of EX POST FACTO LAWS, as given by the Conventions of Massachusetts, Maryland, and North Carolina; in their several Constitutions, or forms of Government.

In the declaration of rights, by the convention of Massachusetts, part 1st. sect. 24, 'Laws made to punish actions done before the existence of such laws, and which have not been declared CRIMES by preceeding laws, are unjust, etc.'

In the declaration of rights, by the convention of Maryland, art. 15th, 'Retrospective laws punishing facts committed before the existence of such laws, and by them only declared criminal, are oppressive, etc.'

*392 In the declaration of rights by the convention of North Carolina, art. 24th, I find the same definition, precisely in the same words, as in the Maryland constitution.

In the declaration of Rights by the convention of Delaware, art. 11th, the same definition was clearly intended, but inaccurately expressed; by saying 'laws punishing offences (instead of actions, or facts) committed before the existence of such laws, are oppressive, etc.'

I am of opinion, that the fact, contemplated by the prohibition, and not to be affected by a subsequent law, was some fact to be done by a Citizen, or Subject.

In 2nd Lord Raymond 1352, Raymond, Justice, called the stat. 7 Geo. 1st. stat. 2 par 8, about registering Contracts for South Sea Stock, an ex post facto law; because it affected Contracts made before the statute.

In the present case, there is no fact done by Bull and wife Plaintiffs in Error, that is in any manner affected by the law or resolution of Connecticut: It does not concern, or relate to, any act done by them. The decree of the Court of Probate of Harford (on the 21st, March) in consequence of which Calder and wife claim a right to the property in question, was given before the said law or resolution, and in that sense, was affected and set aside by it; and in consequence of the law allowing a hearing and the decision in favor of the will, they have lost, what they would have been entitled to, if the Law or resolution, and the decision in consequence thereof, had not been made. The decree of the Court of probate is the only fact, on which the law or resolution operates. In my judgment the case of the Plaintiffs in Error, is not within the letter of the prohibition; and, for the reasons assigned, I am clearly of opinion, that it is not within the intention of the prohibition; and if within the intention, but out of the letter, I should not, therefore, consider myself justified to continue it within the prohibition, and therefore that the whole was void.

It was argued by the Counsel for the plaintiffs in error, that the Legislature of Connecticut had no constitutional power to make the resolution (or law)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 U.S. 386
3 U.S. 386, 3 Dall. 386, 1798 WL 587 (U.S.Conn.), 1 L.Ed. 648
(Cite as: 3 U.S. 386, 1798 WL 587 (U.S.Conn.))

in question, granting a new hearing, etc.

**7 Without giving an opinion, at this time, whether this Court has jurisdiction to decide that any law made by Congress, contrary to the Constitution of the United States, is void; I am fully satisfied that this court has no jurisdiction to determine that any law of any state Legislature, contrary to the Constitution of such state, is void. Further, if this court had such jurisdiction, yet it does not appear to me, that the resolution (or law) in question, is contrary to the charter of Connecticut, or its constitution, which is said by counsel to be composed of its charter, *393 acts of assembly, and usages, and customs. I should think, that the courts of Connecticut are the proper tribunals to decide, whether laws, contrary to the constitution thereof, are void. In the present case they have, both in the inferior and superior courts, determined that the Resolution (or law) in question was not contrary to either their state, or the federal, constitution.

To show that the resolution was contrary to the constitution of the United States, it was contended that the words, ex post facto law, have a precise and accurate meaning, and convey but one idea to professional men, which is, 'by matter of after fact; by something after the fact.' And Co. Litt. 241. Fearnes Con. Rem. (Old Ed.) 175 and 203. Powell on Devises 113, 133. 134. were cited; and the table to Coke's Reports (by Wilson) title ex post facto, was referred to. There is no doubt that a man may be a trespasser from the beginning, by matter of after fact; as where an entry is given by law, and the party abuses it; or where the law gives a distress, and the party kills, or works, the distress.

I admit, an act unlawful in the beginning may, in some cases, become lawful by matter of after fact.

I also agree, that the words 'ex post facto' have the meaning contended for, and no other, in the cases cited, and in all similar cases; where they are used unconnected with, and without relation to, Legislative acts, or laws.

There appears to me a manifest distinction between the case where one fact relates to, and affects, another fact, as where an after fact, by operation of law, makes a former fact, either lawful or unlawful; and the case where a law made after a fact done, is to

operate on, and to affect, such fact. In the first case both the acts are done by private persons. In the second case the first act is done by a private person, and the second act is done by the legislature to affect the first act.

I believe that but one instance can be found in which a British judge called a statute, that affected contracts made before the statute, an ex post facto law; but the judges of Great Britain always considered penal statutes, that created crimes, or encreased the punishment of them, as ex post facto laws.

If the term ex post facto law is to be construed to include and to prohibit the enacting any law after a fact, it will greatly restrict the power of the federal and state legislatures; and the consequences of such a construction may not be foreseen.

**8 If the prohibition to make no ex post facto law extends to all laws made after the fact, the two prohibitions, not to make any thing but gold and silver coin a tender in payment of debts; and not to pass any law impairing the obligation of contracts, were improper and unnecessary.

*394 It was further urged, that if the provision does not extend to prohibit the making any law after a fact, then all choses in action; all lands by Devise; all personal property by bequest, or distribution; by Elegit; by execution; by judgments, particularly on torts; will be unprotected from the legislative power of the states; rights vested may be divested at the will and pleasure of the state legislatures; and, therefore, that the true construction and meaning of the prohibition is, that the states pass no law to deprive a citizen of any right vested in him by existing laws.

It is not to be presumed, that the federal or state legislatures will pass laws to deprive citizens of rights vested in them by existing laws; unless for the benefit of the whole community; and on making full satisfaction. The restraint against making any ex post facto laws was not considered, by the framers of the constitution, as extending to prohibit the depriving a citizen even of a vested right to property; or the provision, 'that private property should not be taken for PUBLIC use, without just compensation,' was unnecessary.

It seems to me, that the right of property, in its origin,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

could only arise from compact express, or implied, and I think it the better opinion, that the right, as well as the mode, or manner, of acquiring property, and of alienating or transferring, inheriting, or transmitting it, is conferred by society; is regulated by civil institution, and is always subject to the rules prescribed by positive law. When I say that a right is vested in a citizen, I mean, that he has the power to do certain actions; or to possess certain things, according to the law of the land.

If any one has a right to property such right is a perfect and exclusive right; but no one can have such right before he has acquired a better right to the property, than any other person in the world: a right, therefore, only to recover property cannot be called a perfect and exclusive right. I cannot agree, that a right to property vested in Calder and wife, in consequence of the decree (of the 21st. of March 1783) disapproving of the will of Morrison, the Grandson. If the will was valid, Mrs. Calder could have no right, as heiress of Morrison, the physician; but if the will was set aside, she had an undoubted title.

The resolution (or law) alone had no manner of effect on any right whatever vested in Calder and wife. The Resolution (or law) combined with the new hearing, and the decision, in virtue of it, took away their right to recover the property in question. But when combined they took away no right of property vested in Calder and wife; because the decree against the will (21st. March 1783) did not vest in or transfer any property to them.

**9 *395 I am under a necessity to give a construction, or explanation of the words, 'ex post facto law,' because they have not any certain meaning attached to them. But I will not go farther than I feel myself bound to do; and if I ever exercise the jurisdiction I will not decide any law to be void, but in a very clear case.

I am of opinion, that the decree of the Supreme Court of Errors of Connecticut be affirmed, with costs.
Paterson, Justice.
The Constitution of Connecticut is made up of usages, and it appears that its Legislature have, from the beginning, exercised the power of granting new trials. This has been uniformly the case till the year 1762, when this power was, by a legislative act,

imparted to the superior and county courts. But the act does not remove or annihilate the pre-existing power of the Legislature, in this particular; it only communicates to other authorities a concurrence of jurisdiction, as to the awarding of new trials. And the fact is, that the Legislature have, in two instances, exercised this power since the passing of the law in 1762. They acted in a double capacity, as a house of legislation, with undefined authority, and also as a court of judicature in certain exigencies. Whether the latter arose from the indefinite nature of their legislative powers, or in some other way, it is not necessary to discuss. From the best information, however, which I have been able to collect on this subject, it appears, that the Legislature, or general court of Connecticut, originally possessed, and exercised all legislative, executive, and judicial authority; and that, from time to time, they distributed the two latter in such manner as they thought proper; but without parting with the general superintending power, or the right of exercising the same, whenever they should judge it expedient. But be this as it may, it is sufficient for the present to observe, that they have on certain occasions, excercised judicial authority from the commencement of their civil polity. This usage makes up part of the Constitution of Connecticut, and we are bound to consider it as such, unless it be inconsistent with the Constitution of the United States. True it is, that the awarding of new trials falls properly within the province of the judiciary; but if the Legislature of Connecticut have been in the uninterrupted exercise of this authority, in certain cases, we must, in such cases, respect their decisions as flowing from a competent jurisdiction, or constitutional organ. And therefore we may, in the present instance, consider the Legislature of the state, as having acted in their customary judicial capacity. If so, there is an end of the question. For if the power, thus exercised, comes more properly within the description of a judicial than of a legislative power; and if by usage or the *396 Constitution, which, in Connecticut, are synonymous terms, the Legislature of that state acted in both capacities; then in the case now before us, it would be fair to consider the awarding of a new trial, as an act emanating from the judiciary side of the department. But as this view of the subject militates against the Plaintiffs in error, their counsel has contended for a reversal of the judgment, on the ground, that the awarding of a new trial, was the effect of a legislative act, and that it is unconstitutional, because an ex post facto law. For

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the sake of ascertaining the meaning of these terms, I will consider the resolution of the General court of Connecticut, as the exercise of a legislative and not a judicial authority. The question, then, which arises on the pleadings in this cause, is, whether the resolution of the Legislature of Connecticut, be an ex post facto law, within the meaning of the Constitution of the United States? I am of opinion, that it is not. The words, ex post facto, when applied to a law, have a technical meaning, and, in legal phraseology, refer to crimes, pains, and penalties. Judge Blackstone's description of the terms is clear and accurate.'There is, says he, a still more unreasonable method than this, which is called making of laws, ex post facto, when after an action, indifferent in itself, is committed, the Legislator, then, for the first time, declares it to have been a crime, and inflicts a punishment upon the person who has committed it. Here it is impossible, that the party could foresee that an action, innocent when it was done, should be afterwards converted to guilt by a subsequent law; he had, therefore, no cause to abstain from it; and all punishment for not abstaining, must, of consequence, be cruel and unjust.' 1 Bl. Com. 46. Here the meaning, annexed to the terms ex post facto laws, unquestionably refers to crimes, and nothing else. The historic page abundantly evinces, that the power of passing such laws should be withheld from legislators; as it is a dangerous instrument in the hands of bold, unprincipled, aspiring, and party men, and has been two often used to effect the most detestable purposes.

**10 On inspecting such of our state Constitutions, as take notice of laws made ex post facto, we shall find, that they are understood in the same sense.

The Constitution of Massachusetts, article 24th of the Declaration of rights.

'Laws made to punish for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government.'

The Constitution of Delaware, article 11th of the Declaration of Rights:

*397 'That retrospective laws punishing offences committed before the existence of such laws, are

oppressive and unjust, and ought not to be made.'

The Constitution of Maryland, article 15th of the Declaration of Rights:

'That retrospective laws, punishing facts committed before the existence of such laws, and by them only declared criminal, are oppressive, unjust, and incompatible with liberty; wherefore no ex post facto law ought to be made.'

The Constitution of North Carolina, article 24th of the Declaration of Rights:

'That retrospective laws, punishing facts committed before the existence of such laws, and by them only declared criminal, are oppressive, unjust, and incompatible with liberty; wherefore no ex post facto law ought to be made.'

From the above passages it appears, that ex post facto laws have an appropriate signification; they extend to penal statutes, and no further; they are restricted in legal estimation to the creation, and, perhaps, enhancement of crimes, pains and penalties. The enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty; and therefore they may be classed together.

Again, the words of the Constitution of the United States are, 'That no State shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts.'Article 1st. section 10.

Where is the necessity or use of the latter words, if a law impairing the obligation of contracts, be comprehended within the terms ex post facto law? It is obvious from the specification of contracts in the last member of the clause, that the framers of the Constitution, did not understand or use the words in the sense contended for on the part of the Plaintiffs in Error. They understood and used the words in their known and appropriate signification, as referring to crimes, pains, and penalties, and no further. The arrangement of the distinct members of this section, necessarily points to this meaning.

I had an ardent desire to have extended the provision in the Constitution to retrospective laws in general. There is neither policy nor safety in such laws; and,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

therefore, I have always had a strong aversion against them. It may, in general, be truly observed of retrospective laws of every description, that they neither accord with sound legislation, nor the fundamental principles of the social compact. But on full consideration, I am convinced, that ex post facto laws must be limited in the manner already expressed; they must be taken in their technical, which is also their common and general, acceptation, and are not to be understood in their literal sense.

**11 *398 Iredell, Justice.

Though I concur in the general result of the opinions, which have been delivered, I cannot entirely adopt the reasons that are assigned upon the occasion.

From the best information to be collected, relative to the Constitution of Connecticut, it appears, that the Legislature of that State has been in the uniform, uninterrupted, habit of exercising a general superintending power over its courts of law, by granting new trials. It may, indeed, appear strange to some of us, that in any form, there should exist a power to grant, with respect to suits depending or adjudged, new rights of trial, new privileges of proceeding, not previously recognized and regulated by positive institutions; but such is the established usage of Connecticut, and it is obviously consistent with the general superintending authority of her Legislature Nor is it altogether without some sanction for a Legislature to act as a court of justice. In England, we know, that one branch of the Parliament, the house of Lords, not only exercises a judicial power in cases of impeachment, and for the trial of its own members, but as the court of dernier resort, takes cognizance of many suits at law, and in equity: And that in construction of law, the jurisdiction there exercised is by the King in full Parliament; which shows that, in its origin, the causes were probably heard before the whole Parliament. When Connecticut was settled, the right of empowering her Legislature to superintend the Courts of Justice, was, I presume, early assumed; and its expediency, as applied to the local circumstances and municipal policy of the State, is sanctioned by a long and uniform practice. The power, however, is judicial in its nature; and whenever it is exercised, as in the present instance, it is an exercise of judicial, not of legislative, authority.

But, let us, for a moment, suppose, that the resolution, granting a new trial, was a legislative act, it will by no means follow, that it is an act affected by the constitutional prohibition, that 'no State shall pass any ex post facto law.' I will endeavour to state the general principles, which influence me, on this point, succinctly and clearly, though I have not had an opportunity to reduce my opinion to writing.

If, then, a government, composed of Legislative, Executive and Judicial departments, were established, by a Constitution, which imposed no limits on the legislative power, the consequence would inevitably be, that whatever the legislative power chose to enact, would be lawfully enacted, and the judicial power could never interpose to pronounce it void. It is true, that some speculative jurists have held, that a legislative act against natural justice must, in itself, be void; but I cannot think that, under such a government, any Court of Justice would possess a power to declare it so. Sir William Blackstone, having put the strong case of an act of Parliament, which should *399 authorise a man to try his own cause, explicitly adds, that even in that case, 'there is no court that has power to defeat the intent of the Legislature, when couched in such evident and express words, as leave no doubt whether it was the intent of the Legislature, or no.' 1 Bl. Com. 91.

**12 In order, therefore, to guard against so great an evil, it has been the policy of all the American states, which have, individually, framed their state constitutions since the revolution, and of the people of the United States, when they framed the Federal Constitution, to define with precision the objects of the legislative power, and to restrain its exercise within marked and settled boundaries. If any act of Congress, or of the Legislature of a state, violates those constitutional provisions, it is unquestionably void; though, I admit, that as the authority to declare it void is of a delicate and awful nature, the Court will never resort to that authority, but in a clear and urgent case. If, on the other hand, the Legislature of the Union, or the Legislature of any member of the Union, shall pass a law, within the general scope of their constitutional power, the Court cannot pronounce it to be void, merely because it is, in their judgment, contrary to the principles of natural justice. The ideas of natural justice are regulated by no fixed standard: the ablest and the purest men have differed upon the subject; and all that the Court could

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

properly say, in such an event, would be, that the Legislature (possessed of an equal right of opinion) had passed an act which, in the opinion of the judges, was inconsistent with the abstract principles of natural justice. There are then but two lights, in which the subject can be viewed: 1st. If the Legislature pursue the authority delegated to them, their acts are valid. 2nd. If they transgress the boundaries of that authority, their acts are invalid. In the former case, they exercise the discretion vested in them by the people, to whom alone they are responsible for the faithful discharge of their trust: but in the latter case, they violate a fundamental law, which must be our guide, whenever we are called upon as judges to determine the validity of a legislative act.

Still, however, in the present instance, the act or resolution of the Legislature of Connecticut, cannot be regarded as an ex post facto law; for, the true construction of the prohibition extends to criminal, not to civil, cases. It is only in criminal cases, indeed, in which the danger to be guarded against, is greatly to be apprehended. The history of every country in Europe will furnish flagrant instances of tyranny exercised under the pretext of penal dispensations. Rival factions, in their efforts to crush each other, have superseded all the forms, and suppressed all the sentiments, of justice; while attainders, on the principle of retaliation and proscription, have marked all the *400 vicissitudes of party triumph. The temptation to such abuses of power is unfortunately too alluring for human virtue; and, therefore, the framers of the American Constitutions have wisely denied to the respective Legislatures, Federal as well as State, the possession of the power itself: They shall not pass any ex post facto law; or, in other words, they shall not inflict a punishment for any act, which was innocent at the time it was committed; nor increase the degree of punishment previously denounced for any specific offence.

**13 The policy, the reason and humanity, of the prohibition, do not, I repeat, extend to civil cases, to cases that merely affect the private property of citizens. Some of the most necessary and important acts of Legislation are, on the contrary, founded upon the principle, that private rights must yield to public exigences. Highways are run through private grounds. Fortifications, Light-houses, and other public edifices, are necessarilly sometimes built upon

the soil owned by individuals. In such, and similar cases, if the owners should refuse voluntarily to accommodate the public, they must be constrained, as far as the public necessities require; and justice is done, by allowing them a reasonable equivalent. Without the possession of this power the operations of Government would often be obstructed, and society itself would be endangered. It is not sufficient to urge, that the power may be abused, for, such is the nature of all power, such is the tendency of every human institution: and, it might as fairly be said, that the power of taxation, which is only circumscribed by the discretion of the Body, in which it is vested, ought not to be granted, because the Legislature, disregarding its true objects, might, for visionary and useless projects, impose a tax to the amount of nineteen shillings in the pound. We must be content to limit power where we can, and where we cannot, consistently with its use, we must be content to repose a salutary confidence. It is our consolation that there never existed a Government, in ancient or modern times, more free from danger in this respect, than the Governments of America.

Upon the whole, though there cannot be a case, in which an ex post facto law in criminal matters is requisite, or justifiable (for Providence never can intend to promote the prosperity of any country by bad means) yet, in the present instance the objection does not arise: Because, 1st. if the act of the Legislature of Connecticut was a judicial act, it is not within the words of the Constitution; and 2nd. even if it was a legislative act, it is not within the meaning of the prohibition.

Cushing, Justice:

The case appears to me to be clear of all difficulty, taken either way. If the act is a judicial act, it is not touched by the Federal Constitution: and, if it is a legislative *401 act, it is maintained and justified by the ancient and uniform practice of the state of Connecticut.

Judgment affirmed.

U.S.
Calder v. Bull
3 U.S. 386, 3 Dall. 386, 1798 WL 587 (U.S.Conn.), 1 L.Ed. 648

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action.

On April 15, 2009, I served the foregoing document described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER OF DEFENDANT CHURCH OF SCIENTOLOGY INTERNATIONAL TO PLAINTIFF'S FIRST AMENDED COMPLAINT  [C.C.P. §430.10(e), (f)]**

By First Class Mail on interested parties in this action as follows:

Barry Van Sickle
Law Offices of Barry Van Sickle
1079 Sunrise Ave., Box B-315
Roseville, CA  95661

Executed on April 15, 2009, at Los Angeles, California

I declare in accordance with the laws of the State of California, under penalty of perjury, that the foregoing is true and correct.

_____
Signature

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER

85