UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | CV 09-3986 DSF (MANx) | | Date | 8/5/10 |
|---|---|---|---|---|
| Title | Marc Headley v. Church of Scientology International | | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge | |
|---|---|---|
| Debra Plato | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     (In Chambers) Order GRANTING Defendant's Motion for Summary Judgment (Docket No. 75)

Defendant filed this motion seeking summary judgment as to Plaintiff's three causes of action. Before the Court ruled on the motion, Plaintiff voluntarily dismissed his first two causes of action with prejudice. (Docket No. 154.) For the reasons noted below, the Court GRANTS Defendant's motion as to the remaining cause of action.

## I. FACTUAL BACKGROUND[1]

Defendant is considered the "Mother Church" of Scientology. (Def.'s Reply Statement of Uncontroverted Facts ("Def.'s SOUF") ¶ 22.) Plaintiff was raised in the Church of Scientology, and in 1990 he joined the religious order called the Sea Organization, or the Sea Org. (Id. at ¶¶ 24, 57, 67.) In order to qualify for the Sea Org, Plaintiff – like all other Sea Org members – had to undergo extensive training and study, pass a fitness exam, and be certified as qualified for the rigors of the Sea Org life. (Id. at ¶ 25.) When he applied to join, he stated that he had participated in the required training and study on his own initiative, that his family did not object to his decision to join, and that he wanted to join because he hoped to "clear the planet," which is Scientology's

---

[1] Unless otherwise noted, the Court relies only on undisputed facts, facts as to which the Court finds the "dispute" to be invalid, and facts as to which the Court denies any evidentiary objections. As with the prior motion for summary judgment, most of Plaintiff's "disputes" are actually objections in disguise, lack merit, and do not create genuine issues of fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

ultimate goal.  (Id. at ¶¶ 62, 64-65.)

Sea Org members live communally, must devote two and a half hours a day to religious study, wear uniforms when on duty, "and have a merit-based maritime rank and rating system and etiquette."  (Id. at ¶ 30.)  Plaintiff testified that Sea Org members have their communications censored by Defendant.  (Pl.'s Undisputed Facts ("Pl.'s UF") ¶ 9.)  Defendant's premises are surrounded by a perimeter fence topped with spikes, are equipped with motion detectors and flood lights, and are monitored by surveillance cameras.  (Id. at ¶¶ 12, 14.)  Security guards are at the premises at all times.  (Id. at ¶ 13.)

Discipline within the Sea Org is based on the church's scripture.  (Def.'s SOUF ¶ 34.)  When Sea Org members act contrary to Scientology's ethical standards, they may be disciplined with either a verbal reprimand, temporary loss of privileges, removal from their position, manual labor, or expulsion from the group.  (Id. at ¶¶ 34.)  Sea Org members often are not allowed to leave Defendant's premises without an escort, and Defendant conducts a procedure known as a "muster" to identify the whereabouts of its staff.  (Pl.'s UF ¶¶ 17-18.)

If Sea Org members want to leave the organization, they may complete a process called "routing out."  (Def.'s SOUF ¶ 38.)  During this process they are still expected to contribute to the Sea Org, and may be required to perform manual labor.  (Id. at ¶ 39.)  If a Sea Org member leaves the organization without following the church's procedures for leaving, members will attempt to follow that member and try to persuade him not to leave.  (Id. at ¶ 40; Pl.'s UF ¶ 20.)  If he decides not to return, he is labeled a "suppressive person," which is the functional equivalent of excommunication.  (Def.'s SOUF ¶ 40.)  Even if he returns, though, he will be subject to discipline.  (Pl.'s UF ¶ 22.)  Security guards are instructed to "keep a close eye" on Sea Org members who are believed to want to leave.  (Pl.'s UF ¶ 16.)  Plaintiff claims the Sea Org disciplines members who even mention wanting to leave.  (Id. at ¶ 29.)

While with Defendant from 1990 to 2005, Plaintiff worked in a variety of positions.  (Def.'s SOUF ¶¶ 70-71.)  His main responsibilities involved creating films on Scientology and manufacturing a device utilized by Scientology known as an "E-Meter." (Id.)  He testified that during his time with Defendant:

I wasn't saying to myself I'm being held against my will.  I think subliminally, I think that I wanted to leave but whether or not I was being held against my will, I don't think I thought those thoughts.

(Def.'s SOUF ¶ 114; Brody Decl. Ex. A. at 999:18-22.)[2]  Plaintiff lived outside of

_____

[2]  Plaintiff contends that he was "forced to perform labor for Defendant against his will as a result of physical, social, and psychological pressures imposed on him by Defendant."  (Pl.'s UF ¶ 37.)  He supports this contention solely with the declaration of Robert Levine, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Defendant's primary premises when he was with Defendant, and would commute to work either on a church bus, a church vehicle, or his own vehicle.  (Def.'s SOUF ¶¶ 116, 118, 123.)  During his years with Defendant, Plaintiff was allowed to own motorcycles, travel around the world, run errands in Hemet, California, visit friends, and take breaks at work to go home and take care of his dog.  (Id. at ¶¶ 119-121, 123-4, 126.)

The only time Plaintiff expressed a desire to leave was in 1990.  (Id. at ¶ 128.)  He was given forms to route out, and was told if he left without routing out he would be declared a suppressive person, which would mean he would lose contact with his Scientologist family members.  (Id.)  He ultimately decided to stay in the Sea Org because he had "made a few friends in high places" and thought he "could get away with a bit more if [he] played [his] cards right."  (Id. at ¶ 129.)

Plaintiff testified that he was physically abused on three separate occasions by two of Defendant's senior members.  (Pl.'s UF ¶ 1.)  Defendant does not dispute that the record includes evidence that physical abuse occurred at its premises.  (Id. at ¶ 3.)  Plaintiff also claims that Defendant subjected him to the following acts of discipline: (1) he once was required to clean human waste from an aeration pond by hand for two days, and he was not allowed to leave when he tried to quit, (id. at ¶ 5); (2) Defendant ordered him to sleep in a tent on its premises for several days where the sprinklers would turn on in the middle of the night, (id. at ¶ 6); (3) he had to clean a kitchen with a toothbrush for several days, (id. at ¶ 7); (4) he was assigned heavy manual labor chores, (id. at ¶ 8); and (5) he had to sleep under his desk or other places in his office.  (Id. at ¶ 30.)  Despite all of these alleged ordeals, Plaintiff stayed in the Sea Org for his wife.  (Def.'s SOUF ¶¶ 115, 139.)

On January 4, 2005, Plaintiff left the Sea Org without routing out.  (Pl.'s UF ¶ 31.)  He claims that he left after he was told that he would be sent to "the Rehabilitation Project Force," which he believed would mean he would never see his wife again, would

---

psychology professor at California State University, Fresno.  (Id.)  The Court sustains Defendant's objection to this declaration under Rule 702 of the Federal Rules of Evidence.  Rule 702 allows expert opinion evidence if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Because the only materials Professor Levine reviewed before forming his "expert opinion" were deposition transcripts from Marc and Claire Headley, the Court finds that the opinion is not the product of reliable principles and methods.  Plaintiff has not provided any evidence showing that others in Professor Levine's field use a similar methodology when forming their expert opinion – that is, that they base their "expert opinion" solely on the deposition transcripts of the parties who hired them.  For these and the other reasons stated in the objections, the declaration is stricken in its entirety.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

be required to perform heavy manual labor, and would be subjected to degrading assignments. (Marc Headley Decl. ¶ 5.) As Plaintiff was leaving Defendant's premises on his motorcycle, two of Defendant's security guards approached him in an SUV. (Pl.'s UF ¶ 31.) The police went to the scene after a passerby reported that there was an ongoing incident there. (Id. at ¶ 33.) When the police arrived, the security guards made a U-turn and left the scene; Plaintiff told the police that the security guards were trying to prevent him from leaving. (Id. at ¶ 34.) A police officer escorted Plaintiff to a U-Haul facility after this incident. (Id. at ¶ 35.) A gray car started to follow the officer and Defendant after they started driving to the facility. (Id.) The police pulled the car over, and the driver, who worked for Defendant, stated that he was following the police because he was "concerned" for Plaintiff. (Id.) Plaintiff ultimately made it to the U-Haul facility, and never returned to Defendant's premises again. (Id. at ¶ 36.)

## II.  LEGAL STANDARD

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(e). A non-moving party who bears the burden of proof at trial as to an element essential to his case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. See Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Anderson, 477 U.S. at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

## III.  DISCUSSION

The Trafficking Victims Protection Act ("TVPA") prohibits, inter alia, knowingly obtaining the labor or services of a person by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person.  18 U.S.C. § 1589(a)(1).  A victim of a violation of the TVPA may bring a civil action against the perpetrator.  18 U.S.C. § 1595.

Defendant argues that this claim fails because of the First Amendment's ministerial exception.  The Court agrees.  "The Religion Clauses of the First Amendment provide that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'"  Alcazar v. Corp. of the Catholic Archbishop of Seattle, 598 F.3d 668, 671 (9th Cir. 2010) (quoting U.S. Const. Amend. I).

In determining whether a statute implicates the Free Exercise Clause of the First Amendment, courts must balance:

> (1) the magnitude of the statute's impact upon the exercise of the religious belief, (2) the existence of a compelling state interest justifying the burden imposed upon the exercise of the religious belief, and (3) the extent to which recognition of an exemption from the statute would impede the objectives sought to be advanced by the state.

Id. at 672 (internal quotation marks omitted).  "[E]ven in pursuit of a compelling state interest, the balancing test contemplates that some statutes may still have such an adverse impact on religious liberty as to render judicial review of a Church's compliance with the statute a violation of the Free Exercise Clause."  Id. (internal quotation marks omitted).  The "rationale for protecting a church's personnel decisions concerning its ministers is the necessity of allowing the church to choose its representatives using whatever criteria it deems relevant."  Id. at 674 (internal quotation marks omitted).  Even so, "[w]here the church provides no doctrinal nor protected-choice based rationale for its alleged actions, and indeed expressly disapproves of the alleged actions," then the rational for applying the exception under this clause most likely does not exist.  Bollard v. California Province of the Society of Jesus, 196 F.3d 940, 948 (9th Cir. 1999).

In determining whether a statute implicates the Establishment Clause, courts must assess: "(1) whether the statute has a secular legislative purpose, (2) whether its principal or primary effect advances or inhibits religion, and (3) whether it fosters an excessive government entanglement with religion."  Alcazar 598 F.3d at 672 (internal quotation marks, ellipsis, and brackets omitted).

Entanglement issues arise whenever the Court must "evaluate religious doctrine or the 'reasonableness' of the religious practices followed by the church."  Bollard, 196 F.3d at 950.  "Entanglement has substantive and procedural components."  Alcazar, 598 F.3d at 672.  "On a substantive level, applying a statute to the clergy-church employment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

relationship creates a constitutionally impermissible entanglement with religion if the church's freedom to choose its ministers is at stake." Id. (internal quotation marks and brackets omitted).  "As for the procedural dimension, the very process of civil court inquiry into the clergy-church relationship can be sufficient entanglement." Id. at 672-73.  In other words, "[i]t is not only the conclusions that may be reached by the court which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions." Id. at 673 (internal quotation marks and brackets omitted).

        The Ninth Circuit has interpreted these clauses to "compel a ministerial exception from neutral statutory regimes that interfere with the church-clergy employment relationship."[3] Alcazar, 598 F.3d at 673.  This exception exists because "government interference with the church-minister relationship *inherently* burdens religion." Id.  It provides protection from statutory liability if a church claims that the challenged conduct is doctrinal; courts "do not scrutinize doctrinal justifications because it is not [their] role to determine whether the Church had a secular or religious reason for the alleged mistreatment . . . ." Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 959 (9th Cir. 2004) (internal quotation marks omitted).  This means that "[a] church's selection of its ministers is unfettered, and its true reasons – whatever they may be – are . . . unassailable." Id. at 961.

        "Because the ministerial exception is constitutionally compelled, it applies as a matter of law across statutes, both state and federal, that would interfere with the church-minister relationship." Alcazar, 598 F.3d at 673.  The exception "encompasses all tangible employment actions and disallows lawsuits for damages based on lost or reduced pay." Id. at 674 (internal quotation marks omitted).  "A tangible employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Elvig, 375 F.3d at 960-61 (internal quotation marks omitted).  Moreover, "a minister's working conditions . . . are a part of the minister's employment relationship with the church." Werft v. Desert Southwest Annual Conference of the United Methodist Church, 377 F.3d 1099, 1103 (9th Cir. 2004).

        Plaintiff does not dispute that: (1) Defendant is a religious institution; (2) he served as a minister for Defendant for the purposes of this analysis; and (3) prior to joining the Sea Org he was aware of the challenges membership in the Sea Org would entail.  He also did not submit any admissible evidence that he joined the Sea Org against his will.

_____

[3] "The Supreme Court has not explicitly addressed the ministerial exception, but the Court's . . . decisions recognize that the First Amendment strongly circumscribes legislative and judicial intrusion into the internal affairs of a religious organization." Alcazar, 598 F.3d at 673.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Therefore, his TVPA claim cannot be grounded on conduct shielded from judicial scrutiny by the ministerial exception.

Plaintiff argues that he is a victim under the TVPA because: (1) he was subject to physical abuse while with Defendant; (2) Defendant's security measures made it difficult for Sea Org members to leave; (3) Defendant would pursue Sea Org members who left without routing out to try to get them to return; (4) he was told that if he left he would lose his wife and family; (5) he was assigned degrading tasks if it was found that he did not comply with Sea Org's rules; (6) Defendant censored Plaintiff's communications; and (7) Defendant threatened Plaintiff that if he left Defendant would sue him for an alleged debt he owed.  (Pl.'s Opp'n 16.)

Defendant does not argue that the ministerial exception bars a TVPA claim to the extent the claim relies on allegations of physical abuse.  But even accepting Plaintiff's testimony about the three instances of abuse over fifteen years, it is not sufficient to raise a triable issue of material fact.  This is especially true given that: (1) Plaintiff testified that he stayed in the Sea Org for his wife, (Def.'s SOUF ¶¶ 115, 139), and he did not think he was being held against his will, (id. at ¶ 114; Brody Decl. Ex. A. at 999:18-22); (2) Plaintiff did not contest Defendant's voluminous evidence regarding his freedom to leave the Sea Org during his time in it (see, e.g., Def.'s SOUF  ¶¶ 119-121, 123-4, 126; and (3) on the one occasion when he thought about leaving, he decided to stay because of his friends in "high places," (id. at ¶ 129), rather than because of any restraints or physical abuse by Defendant.  See Anderson, 477 U.S. at 252 (holding the mere existence of a scintilla of evidence is insufficient to avoid summary judgment if a jury could not find in the non-moving party's favor).

In contrast to Bollard and Elvig, Defendant here represents that the other challenged conduct was doctrinally motivated.  (E.g., Def.'s Reply 10-11, 12-21.)  Therefore, inquiry into these allegations would entangle the Court in the religious doctrine of Scientology and the doctrinally-motivated practices of the Sea Org.  It would also require the Court to analyze the criteria Defendant uses to choose ministers and the reasonableness of the methods used to enforce church policy and encourage members to remain with the organization and the religion itself.  For example, inquiry concerning the pressure Plaintiff felt when faced with the loss of his wife and family would require a value judgment of Scientology's mandate for the complete devotion of its members.  In order to determine whether Defendant's means of persuading members to remain with the Sea Org, etc. fall within the purview of the TVPA, a trier of fact must inquire into Scientology's policies, practices, and scriptures.

The Court rejects Plaintiff's argument that the challenged conduct was not doctrinally motivated.  The argument is premised on the deposition testimony of Defendant's representatives that Scientology does not allow involuntary servitude, forced labor, or human trafficking.  (Pl.'s Opp'n 24-26.)  But the argument is circular.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

questions did not address the actual conduct alleged by Plaintiff.  (See id.; see also Def.'s Reply 29-30.)  Determining whether Scientology's practices of routing out, censorship, or heavy manual labor as a form of discipline, for example, constitute involuntary servitude within the meaning of the TVPA is precisely the type of entanglement that the Religion Clauses prohibit.

The Court also rejects Plaintiff's argument that the ministerial exception categorically does not apply to claims under the TVPA.  The only support for this argument comes from an out-of-circuit magistrate judge's report and recommendation that does not even cite to Ninth Circuit decisions on the ministerial exception, let alone apply the exception in accordance with Ninth Circuit case law.  Moreover, the report's categorical exclusion of the TVPA from the ministerial exception appears contrary to the Ninth Circuit's articulation of the exception.

For these reasons, this claim fails.

## IV.  CONCLUSION

Defendant's motion is GRANTED.


IT IS SO ORDERED.